IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALEX NAIN SAAB MORAN, *et al.*,<br><br>Defendants. | Case No. 19-20450-CR-Scola |

**DECLARATION OF KENDALL WANGSGARD**
**IN SUPPORT OF MOTION TO COMPEL**

1.  I, **KENDALL WANGSGARD, ESQ.**, am Counsel at the law firm of Baker & Hostetler LLP, attorneys for Defendant Alex Nain Saab Moran ("Mr. Saab") in the above-captioned matter. I have entered a special/temporary appearance *pro hac vice* as counsel in this matter. *See* ECF No. 15 (Jan. 22, 2021); ECF No. 111 (June 21, 2022). Given my position, I have personal knowledge of the information addressed herein. I am authorized to make this declaration on behalf of Mr. Saab in support of his motion to dismiss the indictment on the basis of diplomatic immunity from prosecution. *See* ECF No. 102 (June 2, 2022).

2.  As a member of Mr. Saab's defense team, I regularly participate in email and verbal/telephonic communications among and between members of the defense team and members of the prosecution (in particular representatives from the U.S. Attorney's Office for the Southern District of Florida and the U.S. Department of Justice's Fraud Section (together, "the government")).

**Exhibits**

3.  Attached hereto as **EXHIBIT A** is a true and correct copy of a letter dated November 18, 2021, from the Law Offices of Neil M. Schuster to Messrs. Kurt Lunkenheimer,

Esq. and Alexander Kramer, Esq., counsel for the government, regarding "DISCOVERY REQUEST." Mr. Schuster and his firm are members of Mr. Saab's defense team in this matter, and I have confirmed the authenticity of this letter with him.

4. Attached hereto as **EXHIBIT B** is a twenty-one-page excerpt, encompassing Chapter 11 ("Desperate Measures"), from the book *A Sacred Oath: Memoirs of a Secretary of Defense During Extraordinary Times* (2022) by former-Secretary of Defense Mark T. Esper.

5. Attached hereto as **EXHIBIT C** is a true and correct copy of a letter dated June 23, 2022, from Baker & Hostetler LLP to Messrs. Lunkenheimer and Kramer regarding "Supplemental Discovery Request." I was copied on the email by which this letter was transmitted to counsel for the government.

## Prosecution-Defense Verbal Communications

6. Below I provide a high-level summary of certain significant portions of recent verbal communications relevant to Mr. Saab's motion to compel. The below is not intended to be a transcription of what occurred, and certain details have been omitted for purposes of brevity and efficiency.

7. <u>June 16, 2022</u>: I attended a telephonic meeting between counsel for the government and counsel for Mr. Saab on June 16, 2022. During that call, among other things, counsel for the government stated its belief that the government had fulfilled its *Brady*/Rule 16 obligations (but would continue to consider the issue) and the "prosecution team" did not possess material relevant to diplomatic immunity other than the recent book penned by former Defense Secretary Mark Esper, *A Sacred Oath*. Counsel for the government stated that it did attempt contact with former-Secretary Esper, who declined to speak with the government. Otherwise, counsel for the government advised, it was not aware of a requirement to proactively seek

2

information possessed by other federal agencies or departments because it did not believe they were part of the "prosecution team." Counsel for the government did invite defense counsel to present the government with a contrary written argument/authority and invited defense counsel to also present authority regarding the contended contours of the government's *Brady* obligations, with government counsel "happy to be convinced" and the "sooner you provide something educational, the more we would appreciate it." Defense counsel agreed to provide a letter further articulating its position.

8. *June 28, 2022*: I attended a telephonic meeting between counsel for the government and counsel for Mr. Saab on June 28, 2022, following the June 23 disclosure request letter (Exhibit C, *supra*). During that call, among other things, counsel for the government stated that it would provide information related to governmental awareness of Mr. Saab's status as a diplomat or special envoy at the time of travel "to the extent [that the] prosecution team" was aware of such information. But counsel for the government again stated its view that elements of the intelligence community, including the Department of Defense ("DOD"), the Department of State ("State"), and the CIA, are not part of the "prosecution team" for purposes of *Brady*. Counsel for the government did confirm that it was trying "to be helpful" and "alleviate any concerns," and thus would make prudential search requests and would provide further details regarding the response thereto by other agencies.[1] The parties agreed to work together on any mechanisms for expediting the review process (e.g., reviewing search term hits together to eliminate potential false hits). The parties also agreed to consider an adjournment (which

---

[1] Counsel for the government also stated that while it did not necessarily think it had an obligation to do so, it was seeking information from Cape Verde via MLAT based on certain defense requests but would not be seeking additional information from other countries (e.g., Colombia or Venezuela).

3

thereafter occurred, *see* ECF No. 114 (July 5, 2022)) because there was simply not enough time to complete the searches and reviews before the then-scheduled brief deadline.[2]

9. *July 12, 2022*: I attended a telephonic meeting between counsel for the government and counsel for Mr. Saab on July 12, 2022. During that call, among other things, counsel for the government stated that it had requested materials from DOD, State, and the CIA on an expedited basis, though it did not believe it was legally required to do so under either *Brady* or Rule 16. It advised that State had not yet responded, the review of CIA materials would begin the following week, and DOD had begun a search that was anticipated to yield results by August 22. Regarding the Department of Treasury/OFAC, government counsel had not sought, and was not intending to seek, information. Finally, regarding DOJ's own materials, the government stated that it had not made any formal request of either the Office of International Affairs ("OIA") or the National Security Division ("NSD"), but would internally discuss defense counsel's request for information possessed by these DOJ components.

10. *August 9, 2022*: I attended a telephonic meeting between counsel for the government and counsel for Mr. Saab on August 9, 2022. Regarding DOJ materials, the government stated that, setting aside OIA, it would be able to meet the August 15 deadline set by the Court, *see* ECF No. 116 (July 15, 2022), with respect to non-classified materials. It advised that this would not be a substantial production. Regarding OIA, counsel for the government advised that it had identified 55,000 potentially relevant unclassified OIA emails based on search terms and time parameters, which it hoped would be reduced in number by deduping. Counsel

---

[2] The Parties advised the Court on June 30, 2022 that "[a]lthough the Parties do not necessarily agree on the scope of the government's *Brady* and Rule 16 obligations, the government has agreed to search its own records and to request the Department of State, Department of Defense and the Central Intelligence Agency to search their records for documents responsive to many of the Defendant's requests." *See* ECF No. 113 (June 30, 2022).

for the government warned that it would be unable to complete this OIA review by August 15 and indicated that OIA counsel also had asked for the opportunity to review materials and claim any privilege it felt was applicable before any OIA documents were produced.

11. Regarding State, the government reiterated that it had requested State to search, which request State acknowledged having received. The government indicated that it understood State was in the process of responding to the request. However, State did not provide a date certain for determining the volume of materials or when a production could be made. The government also advised that it anticipated litigation regarding classified materials under the Classified Information Procedures Act ("CIPA").

12. Regarding Treasury, the government reiterated that it would not seek information from Treasury at this time.

13. The government also reiterated that it expected the "next update" from DOD on August 22.

14. *August 15, 2022*: On August 15, 2022, the government sent defense counsel a two-page "summary of unclassified information" letter. In its letter, DOJ stated that it searched for material "in the possession of the DOJ investigative team assigned to this criminal case," specifically "reports contained by the Drug Enforcement Administration ("DEA"), the Federal Bureau of Investigation ("FBI"), Homeland Security Investigations ("HIS") [sic] and Customs and Border Protection ("CBP")." The letter proceeded to briefly summarize two things: (1) some "DEA Reports of debriefs of your client that were produced in discovery"; and (2) DEA telephonic interviews with a source of information ("SOI"). Apparently, in May 2020, the SOI "stated that he/she had learned that nominal Venezuelan President Nicolas Maduro had brought in Colombian Alex Saab Moran to be in charge of sales of crude oil produced in Venezuela."

According to the SOI, Saab Moran works directly with Mexican businessmen to export crude oil to Mexico and bring fuel and other essential goods to Venezuela and he does this "under the supervision of Maduro." The letter also advises that the SOI "recently" (no date is given) provided conflicting statements that Saab Moran was working as a private citizen and not in an official capacity.

15. The letter also contained an ambiguous and unsourced third paragraph, obliquely stating that "the information that led to Saab Moran's detention in Cape Verde, was that Saab Moran was traveling to Iran from Venezuela, and that he was traveling with an Iranian delegation." The letter does not elaborate where, when, why, or from whom, this "information" was obtained, or provide any details about the substance of the information, such as the meaning of the phrase "Iranian delegation."

16. *August 16, 2022*: I attended a telephonic meeting between counsel for the government and counsel for Mr. Saab on August 16, 2022. Counsel for the government stated that the summary letter from the day prior constituted the *entire* disclosure of non-classified DOJ materials (other than from OIA).[3] The government also stated that the four entities mentioned in the summary letter—i.e., DEA, FBI, HSI, CBP—were the entities for which information was searched, and that it had asked those entities only to search for "reports," not any other types of documents, such as emails, texts, communications, notes, memoranda, etc., that might be relevant to the Rule 16 and *Brady* requests. In addition, government counsel acknowledged that it had not sought materials from other components of the Department of Justice (other than OIA,

---

[3] Defense counsel requested the materials, even in redacted form, supporting the summary letter to specifically include the DEA Form-6 reports. Defense counsel further stated that it was not seeking the name of the Source of Information, but the supporting content for the summary letter, the basis for the disclosure, and potentially contradictory statements made by the Source of Information. Counsel for the government took this under advisement.

and one civil division attorney who was working with the State Department). In particular, they had not requested documents from the NSD. When defense counsel suggested that government counsel call NSD and speak with someone to identify the division's relevant record custodians so as to develop a search plan, the government replied that it would discuss the matter internally. Regarding OIA, the government indicated that it had narrowed/de-duped the unclassified OIA emails from approximately 55,000 to 39,000 and was beginning to review them. When asked how long it would take to review the OIA emails, the government responded that it might take 2-3 weeks but was not sure, and it would update defense counsel before the August 26 status conference.

17. Regarding State materials, the government advised that it had not received any further information from State beyond that State was pulling together information. Further, counsel for the government advised, State is aware of this Court's upcoming status conference on August 26, 2022, and hopefully there would be further clarity by then. The government reiterated that it anticipated CIPA litigation over classified documents and did not know if all State materials would end up being classified.

18. Regarding DOD, counsel for the government stated that DOD was still slated to provide a sense of volume of materials by August 22, but not actual documents by that date.

19. *August 24, 2022*: I attended a telephonic meeting between counsel for the government and counsel for Mr. Saab on August 24, 2022. Regarding the August 22 response date provided by DOD, counsel for the government relayed that DOD had ***neither*** met that deadline ***nor*** provided any other update or any documents to counsel for the government.

20. Regarding OIA, counsel for the government stated that it had reviewed about one-third of the non-classified side and the projected completion date (in an additional 2-3 weeks)

was still an accurate estimate. However, with respect to other DOJ components such as NSD, government counsel stated that it was not expanding the search beyond what it "traditionally considers the prosecution team [and] investigative agencies involved" plus OIA and one other Civil Division attorney involved in the extradition process. The government stated that it has conducted no searches of any NSD materials. Counsel for the government further stated that they would not search any emails of DOJ trial attorneys or Assistant U.S. Attorneys.

21. Regarding State, counsel for the government advised that State had completed its internal review and pull of documents and was in the process of transferring the unclassified emails/documents to the DOJ review platform. Although counsel for the government did not yet know the specific volume of documents, they understood from preliminary estimates that there would be about 2,200 unclassified State records for review and perhaps an equal amount on the classified side.

22. Regarding the August 15 summary letter, counsel for the government confirmed that it would not produce any underlying documents, including the DEA Form-6 reports, and that the government "stands by the summary." Further, counsel for the government stated that it believes communications relevant to Mr. Saab's plane being stopped in Cape Verde were telephonic, but there "potentially" could be notes from the case agent. Defense counsel again requested the production of all documents and information related to the summary provided in the letter, as well as the identities of all persons who might have relevant information about the communications concerning Mr. Saab's plane. Counsel for the government stated that by providing the summary in the letter they had satisfied their *Brady* obligations.[4] Counsel for the

---

[4] However, when listening to the verbal description of the support for the summary in the letter, it was defense counsel's assessment that the government's explanation was not consistent between the calls where it was discussed.

government also stated that they had checked with the lead case agent, who confirmed that he did not have any responsive text communications, but the government had not expanded its review further to either (1) other agents or personnel on the "investigation team" or (2) other forms of communications (such as emails, notes, etc.) beyond reports and "cables." Defense counsel disagreed with the government's narrow view of its Rule 16/*Brady* obligation to search for and produce requested documents, records and communications.

23.    Counsel for the parties also discussed potential CIPA litigation, the government's anticipated filing of a CIPA Section 2 Notice in the coming days, and the Defendant's anticipated flng of this motion and a motion for remote (Zoom) testimony at the evidentiary hearing.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 25, 2022
Washington, DC

_____
Kendall Wangsgard