IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALEX NAIN SAAB MORAN, *et al.*,<br><br>Defendants. | Case No. 19-20450-CR-Scola |

**DEFENDANT'S MOTION TO PERMIT**
**WITNESS TESTIMONY BY VIDEOCONFERENCE**

Defendant Alex Nain Saab Moran ("Defendant" or "Mr. Saab") respectfully moves this Court for an order permitting the videoconference testimony (e.g., Zoom) of witnesses located in Venezuela who are called by Defendant during the evidentiary hearing on diplomatic immunity, scheduled to commence October 31, 2022. At this time, Defendant anticipates calling two potential Venezuelan witnesses, "VZ Witness 1" and "VZ Witness 2."[1] In addition, because the government's opposition to Defendant's renewed motion to dismiss based on diplomatic immunity is not due until October 7, 2022, Defendant anticipates that he may need to call additional Venezuelan witnesses to counter the government's contentions therein. *See* Order, ECF No. 116. As elaborated *infra*, any such additional Venezuelan witnesses will face the same hurdles to in-person testimony as VZ Witness 1 and VZ Witness 2. Accordingly, Defendant moves the Court to permit the live videoconference testimony of any additional Defense witnesses located in Venezuela, contingent upon Defendant providing the Court and the government with the names

---

[1] Given concern about media harassment of witnesses, at this time Defendant is not disclosing the witness names in this public filing. In addition, sensitive personal health information (i.e., vaccination status) warrants anonymization. As detailed below, however, the names of VZ Witness 1 and VZ Witness 2 have been provided to the government.

and anticipated general substance of such additional witnesses' testimony by October 17, 2022, the date on which Defendant's reply brief is due. *Id.*[2]

### INTRODUCTION AND CONCISE STATEMENT OF MATERIAL FACTS

Defendant faces one count of conspiracy to launder money in violation of 18 U.S.C. § 1956(h).[3] On June 12, 2020, while traveling to Iran on a diplomatic mission on behalf of Venezuela, Mr. Saab's plane landed for refueling in Cape Verde, where he was forced to deplane and was detained/arrested. The U.S. government requested Mr. Saab's extradition, which Mr. Saab opposed, requesting this Court's leave to make a special appearance challenging his indictment based upon *in transitu* diplomatic immunity. Special appearance was denied based upon the fugitive disentitlement doctrine, and Mr. Saab sought interlocutory review from the Eleventh Circuit Court of Appeals.

The Eleventh Circuit concluded that "the parties did not have the opportunity to fully develop the record, and the district court did not have the opportunity to weigh the evidence, concerning [Mr. Saab's] claim that he is immune from prosecution because he is a foreign diplomat" and thus remanded to this Court "to consider in the first instance whether Saab Moran is a foreign diplomat and immune from prosecution." *United States v. Saab Moran*, No. 21-11083, 2022 WL 1297807, at *2 (11th Cir. May 2, 2022). Upon remand, this Court established a briefing schedule regarding Mr. Saab's renewed motion to dismiss on the basis of diplomatic immunity, with an evidentiary hearing set to begin October 31, 2022. *See* Order, ECF No. 116.

During the July 15, 2022 status conference, the issue of remote foreign witnesses and their need for interpreters was raised. Transcript of Status Conf., ECF No. 122 at 20:25-21:18. When

---

[2] Or, 14 days before commencement of the hearing should there be any modification of the current schedule.
[3] Seven counts of money laundering were dismissed by the government as a condition of Mr. Saab's extradition from Cape Verde. *See* Order of Dismissal, ECF No. 64.

2

this Court queried the court interpreter's office representative about whether the necessary interpreter(s) would be physically present in the courtroom versus the remote location where the witnesses were located, *id*. at 21:4-23, counsel for the government expressed opposition to any remote live testimony, stating "we are trying to propose Rule 15 depositions" rather than live videoconference testimony, on the basis that pre-hearing depositions under Rule 15 "would obviously alleviate the need for live interpretation" during the evidentiary hearing. *Id*. at 22:3-5.

As elaborated below, Defendant opposes any effort by the government to procure these witnesses' testimony via Rule 15 of the Federal Rules of Criminal Procedure and seeks an order allowing the Venezuelan witnesses to testify live, via videoconference.

## **ARGUMENT**

Live testimony via videoconferencing technology has long been allowed by courts in criminal proceedings. Indeed, in *Maryland v. Craig*, 497 U.S. 836 (1990), the Supreme Court upheld the use of testimony by a child witness in a child abuse case via one-way, closed circuit television, concluding that that such remote, live testimony did not violate the Confrontation Clause because there were "safeguards of reliability and adversariness" such as the witness being placed under oath, the accused's ability to cross-examine, and the trier of fact's ability to observe demeanor. *Id*. at 851. All of these safeguards will also exist if the present motion is granted.

Unlike *Craig*, there is no Confrontation Clause concern here, as the *Defendant*, not the government, is seeking to use live, videoconferencing testimony. The absence of Confrontation Clause concerns, combined with the need to preserve Defendant's due process right to present material evidence in his favor (elaborated in section I below), counsel in favor of granting the present motion. Moreover, the usefulness and viability of live videoconference testimony has been repeatedly demonstrated by the widespread adoption, as a response to COVID-19, of court rules

allowing such testimony during criminal proceedings. *See, e.g.*, Eighth Order Concerning Authorization Under the CARES Act, U.S. Dist. Ct., S.D. Fla., Admin. Order 2022-7 (Jan. 12, 2022) (authorizing judges in the Southern District of Florida to use "video conferencing . . . in all criminal hearings for defendants on bond."). The use of live videoconferencing technology is thus neither constitutionally nor pragmatically problematic.

I. **Live Testimony Via Videoconference Comports With Defendant's Constitutional Rights**

Defendant seeks permission to present the live videoconference testimony of VZ Witness 1 and VZ Witness 2, and other potential witnesses, for two important reasons. First, the testimony of these witnesses is highly material to Defendant's affirmative defense of diplomatic immunity. VZ Witness 1 is a member of the Venezuelan National Guard, who has provided security for Mr. Saab and his family inclusive of the time that Mr. Saab has served as a Special Envoy for the Venezuelan government. He has personal knowledge of Mr. Saab's diplomatic status, travels, and diplomatic meetings with Iranian officials. VZ Witness 2 is an official in the Venezuelan government, whose diplomatic portfolio includes Cape Verde. In this capacity, VZ Witness 2 has personal knowledge of Mr. Saab's diplomatic status, the Venezuelan government's diplomatic response to Cape Verde's detention/arrest of Mr. Saab, and Venezuela's practice of issuing and maintaining diplomatic correspondence. Likewise, any additional Venezuelan witnesses will be material to diplomatic immunity.

Indeed, the testimony proffered by VZ Witness 1 and VZ Witness 2 and any additional witnesses must be placed before the Court to ensure the equitable and just administration of the law. The suppression of material evidence favorable to an accused is a violation of the Due Process Clause of the Fifth Amendment and the Compulsory Process Clause of the Sixth Amendment. As the Eleventh Circuit held in *United States v. Hurn*, 368 F.3d 1359, 1362 (11th Cir. 2004), "[t]he

4

Sixth Amendment to the United States Constitution guarantees defendants the right to have 'compulsory process for obtaining witnesses in his favor.' Implicit in this right—as well as the basic notion of 'due process of law' in general—is the idea that criminal defendants must be afforded the opportunity to present evidence in their favor." (internal citations omitted); *accord United States v. Machado*, 886 F.3d 1070, 1085 (11th Cir. 2018). A criminal "defendant's right to a fair trial is violated when the evidence excluded is material in the sense of a crucial, critical, highly significant factor." *United States v. Ramos*, 933 F.2d 968, 974 (11th Cir. 1991) (citing *Osborne v. Wainwright*, 720 F.2d 1237, 1238 (11th Cir. 1983)). Under Eleventh Circuit precedent, evidence is "material" to the defense in four specific circumstances, including "evidence directly pertaining to . . . an affirmative defense." *Machado*, 886 F.3d at 1085; *Hurn*, 368 F.3d at 1363. Here, the testimony of VZ Witness 1 and VZ Witness 2 and any additional witnesses will directly pertain to Defendant's affirmative defense of diplomatic immunity. As such, Defendant has a right under both the Fifth and Sixth Amendments to present such testimony, and granting the present motion will ensure that Defendant's constitutional rights are protected.

Second, Defendant seeks videoconference testimony from VZ Witness 1 and VZ Witness 2 and any additional witnesses out of necessity, as there is no other practical way to obtain their live testimony, thus providing the best alternative to their physical presence in court. All of these witnesses are located in Venezuela and will be unable physically to attend the hearing in court due to no fault of their own. For example, VZ Witness 1 has attempted to obtain a U.S. visa by applying for a B1/B2 visitor visa to enter the United States. After submitting his application, VZ Witness 1 will be required, as is customary, to appear for an interview at the U.S. embassy in Bogota, Colombia.[4] However, the earliest available date for such an interview is October 25, 2024—almost

---

[4] Venezuelans seeking visas to enter the United States are required to apply at the U.S. embassy in Bogota, Colombia because the U.S. has suspended operations of the U.S. embassy in Caracas,

5

two years after the Court's diplomatic immunity hearing is scheduled to take place. Although counsel for the government has expressed a willingness to inquire about the possibility of expediting the application process, government counsel has been clear that it has no control over the issuance of visas and can provide no assurance that the visa will be issued at all, much less by the time the hearing commences on October 31, 2022. Based on these facts, there is no reasonable possibility that VZ Witness 1 will be able to obtain a U.S. visa in time to attend the hearing on diplomatic immunity.

In light of VZ Witness 1's situation, VZ Witness 2 has not yet applied for a U.S. visa; doing so appears futile. Regarding potential additional witnesses, once identified, there is no realistic possibility that U.S. visas could be procured for them by the hearing's commencement on October 31.

Even if the U.S. government should miraculously issue visas prior to the start of the diplomatic immunity hearing on October 31, however, VZ Witness 1, VZ Witness 2, and any other rebuttal witness are all highly unlikely to qualify for U.S. entry under a Presidential Proclamation relating to COVID-19. *See Advancing the Safe Resumption of Global Travel During the COVID-19 Pandemic*, Proclamation No. 10294 at § 3, 86 Fed. Reg. 59603 (Oct. 25, 2021). Indeed, of the vaccines approved and distributed in Venezuela—Sinovac, Sinopharm, Abdala, EpiVacCorona, and Sputnik V/Sputnik Light[5]—only two (Sinovac and Sinopharm) are on the "Accepted COVID-

---

Venezuela. *See* U.S. Embassy in Venezuela, U.S. Visa Services, *available at* https://ve.usembassy.gov/visas/.

[5] *See Venezuela to Receive Sinovac & Sinopharm Vaccines through COVAX as Delta Variant Confirmed*, Venezuelanalysis.com (July 29, 2021), *available at* https://venezuelanalysis.com/news/15274. *See also* Venezuela: 'Deep Concern' Over Use of Cuba's Covid Vaccine, NBC News (September 28, 2021), *available at* https://www.nbcnews.com/news/latino/venezuela-deep-concern-use-cubas-covid-vaccine-rcna2324 (Venezuela has relied on vaccines from Cuba, Russia, and China). Abdala is a Cuban vaccine. EpiVacCorona and Sputnik V/Sputnik Light are Russian vaccines. Sinovac and Sinopharm are Chinese vaccines. None of the Cuban, Russian or Chinese vaccines are on the

19 Vaccines" list issued by the U.S. Centers for Disease Control. *See* U.S. Centers for Disease Control & Prevention, Requirements for Proof of COVID-19 Vaccination for Air Passengers, *available at* https://www.cdc.gov/coronavirus/2019-ncov/travelers/proof-of-vaccination.html#covid-vaccines. However, neither VZ Witness 1 nor VZ Witness 2 have received the Sinovac or Sinopharm vaccines and are thus ineligible to enter the U.S. under the Presidential Proclamation and implementing CDC rules.

Additional witnesses are also unlikely to qualify for U.S. entry, since the vaccines distributed in Venezuela (other than Sinovac and Sinopharm) are not accepted for U.S. entry, and only about half of Venezuela's population has received any COVID vaccine at all. *See* Regina Garcia Cano, *Venezuela's Alarmingly Low Vaccine Rate Among Worst in World*, AP News (July 14, 2022), *available at* https://apnews.com/article/covid-health-venezuela-public-caribbean-93dced67f765654da6d616b534377566. According to the World Health Organization, as of August 19, 2022, Venezuela's rate of "persons fully vaccinated with last dose of primary series" per 100 people is very low, at 50.24%. *See* World Health Org., Coronavirus (COVID-19) Dashboard, Situation by Region, Country, Territory & Area, *available at* https://covid19.who.int/table. Thus, if the highly material testimony of VZ Witness 1, VZ Witness 2, or any other necessary witnesses is going to be heard, the only way to do so is via live videoconference.

---

CDC's "approved list." *See* https://www.cdc.gov/coronavirus/2019-ncov/travelers/proof-of-vaccination.html#covid-vaccines.

## II. A Pre-Trial Deposition to "Preserve Testimony" Would be Inappropriate Here

The government has expressed—to both defense counsel and this Court—its position that the testimony of any defense witnesses located overseas should be taken via Rule 15 of the Federal Rules of Criminal Procedure. *See* Transcript of Status Conf., ECF No. 122 at 22:3-5. Under Rule 15, "[a] party may move that a prospective witness be deposed in order to preserve testimony for trial." Fed. R. Crim. P. 15(a). The Rule further specifies that Rule 15 may be invoked only in "exceptional circumstances and in the interests of justice." *Id*. As the Eleventh Circuit has recognized, Rule 15 "[d]epositions are generally disfavored in criminal cases." *United States v. Drogoul*, 1 F.3d 1546, 1551 (11th Cir. 1993).

The government has not yet made a Rule 15 motion, which would be required by the plain language of Rule 15(a). *Id*. ("A party may move . . . ."). "[A] deposition taken pursuant to Rule 15 requires that *either a party or a detained witness move* that the depositions be taken. . . . Rule 15 does not authorize the district court to mandate such an order" without a proper motion being made. *United States v. Fuentes-Galindo*, 929 F.2d 1507, 1510 (10th Cir. 1991) (emphasis added); *see also United States v. Lopez-Cervantes*, 918 F.2d 111, 112-13 (10th Cir. 1990). Even if the government does make a Rule 15 motion, however, it should be denied for three reasons.

First—and most fundamentally—both Circuit precedent and the House Judiciary Committee's report accompanying Rule 15 make clear that "a party may only move to take the deposition of one of its *own witnesses*, not one of the adversary party's witnesses." H.R. Rep. No. 94-247, at 10 (1975), *as reprinted in* 1975 U.S.C.C.A.N. 674, 682 (emphasis added); *accord Application of Eisenberg*, 654 F.2d 1107, 1113 n. 9 (5th Cir. 1981)[6] ("Depositions of a party's *own*

---

[6] Decisions of the Fifth Circuit "as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, *shall be binding as precedent in the Eleventh Circuit*, for [the Eleventh Circuit itself], the district courts, and the bankruptcy courts of the

8

*witnesses* are allowed during the pendency of a criminal action only when preservation of testimony is in the interests of justice due to exceptional circumstances.") (emphasis added). VZ Witness 1 and VZ Witness 2, and any additional witnesses, are all adverse to the government, not the government's "own witnesses"; any Rule 15 motion made by the government relating to them is therefore inappropriate. *Accord United States v. Salamanca*, 2007 WL 9729244, at *2 (S.D. Fla. Aug. 21, 2007) ("Rule 15 does not allow a party to depose adverse witnesses"); *United States v. Rich*, 580 F.2d 929, 934 (9th Cir. 1978) ("the rule [Rule 15] contemplates a party taking the deposition only of his own witness, a requirement that comports with the purpose of preserving testimony.").

Second, pre-trial depositions under Rule 15 are permitted only "to preserve testimony for trial." Fed. R. Crim. P. 15(a). The deposition of VZ Witness 1 or VZ Witness 2 or any other witnesses is not needed "to preserve testimony for trial," Fed. R. Crim. P. 15(a), which is the "only authorized purpose" for granting a Rule 15 motion. *Drogoul*, 1 F.3d at 1551. These witnesses' testimony is not needed "for trial" at all, but rather a *pretrial* hearing on diplomatic immunity, and Rule 15's plain language renders the rule inapplicable to the present situation. In addition, Rule 15's preservation requirement necessitates a finding that the witness(es) are "unavailable" to proffer live testify, which means "a substantial likelihood exists that the proposed deponent will not testify at the [hearing]." *Id*. at 1553. There is no indication here, however, that these witnesses will be "unavailable" for live testimony at the evidentiary hearing, or that "coercion may be used upon [them] to induce [them] to change [their] testimony or not to testify." Fed. R. Crim. P. 15,

---

circuit." *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (emphasis added); *accord United States v. Moss*, 34 F.4th 1176, 1188 n.5 (11th Cir. 2022).

Advisory Committee's Note to 1974 amendment. Both VZ Witness 1 and VZ Witness 2 and any additional Venezuelan witnesses should be fully available for live testimony via videoconference.

Third, there are no "exceptional circumstances" to justify a Rule 15 deposition given willingness to testify live via videoconference. *See Drogoul*, 1 F.3d at 1552 (movant bears burden of establishing "exceptional circumstances" to justify Rule 15 deposition). Live videoconference testimony will preserve this Court's ability "to observe the demeanor of deposition witnesses" in a real-time, meaningful manner—which is one of the "primary reasons for the law's normal antipathy toward depositions in criminal cases . . . ." *Drogoul*, 1 F.3d at 1552; *accord United States v. Milan-Rodriguez*, 828 F.2d 679, 686 (11th Cir. 1987). Live testimony via videoconference is superior, procedurally, to a pre-trial deposition under Rule 15, and there are no "exceptional circumstances" that would render a preservative, pre-trial deposition under Rule 15 appropriate here.

Granting the present motion will thus provide the only appropriate, meaningfully effective method of presenting the testimony of VZ Witness 1 and VZ Witness 2 and any additional witnesses that Defendant may need to call during the diplomatic immunity hearing.

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully moves this Court for an order permitting the live videoconference testimony of any Defense witnesses located in Venezuela, including VZ Witness 1 and VZ Witness 2. For any additional witnesses, including rebuttal necessitated by submission of the government's diplomatic immunity opposition brief, due October 7, 2022, Defendant will provide the Court and the government with the names and anticipated general substance of such witnesses' testimony at the same time Defendant's reply brief is due.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 88.9

Counsel has conferred with Counsel for the government pursuant to Local Rule 88.9 in a good faith effort to resolve the issues raised in this motion and has been unable to do so.

Date: September 1, 2022

Respectfully submitted,

BAKER & HOSTETLER LLP

/s/ *Lindy K. Keown*
Lindy K. Keown (FL: 117888)
200 South Orange Avenue
Suite 2300
Orlando, Florida 32801
Tel: (407) 649-4000
lkeown@bakerlaw.com

/s/ *David B. Rivkin, Jr.*
David B. Rivkin, Jr. (*pro hac vice*)
Elizabeth Price Foley (FL: 92380)
Jonathan R. Barr (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Suite 1100
Washington, DC 20036
Tel: (202) 861-1500
drivkin@bakerlaw.com
efoley@bakerlaw.com
jbarr@bakerlaw.com

Jonathan B. New (*pro hac vice*)
45 Rockefeller Plaza
11th Floor
New York, New York 10111
Tel: (212) 589-4200
jnew@bakerlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 1, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Lindy K. Keown*
Lindy K. Keown