UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case Number: <u>19-cr-20450-SCOLA</u>

UNITED STATES OF AMERICA,

Plaintiff,

v.

ALEX NAIN SAAB MORAN,

Defendant.

_____/

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DISCOVERY MATERIALS**

The United States of America, by and through the undersigned counsel, hereby opposes Defendant Alex Nain SAAB MORAN's ("SAAB MORAN") Motion To Compel Production of Discovery Materials (hereinafter the "Motion").  SAAB MORAN has previously requested documents allegedly related to his diplomatic immunity defense from a large swath of agencies across the United States government, including the Department of State, Department of Treasury, Department of Defense, and the U.S. Coast Guard.  He also requested materials from Cabo Verde, Colombia, and Venezuela.  In the current Motion, SAAB MORAN seeks purported *Brady* materials and other discovery in the possession of the National Security Division of the Department of Justice ("NSD"), Department of Justice Office of International Affairs ("OIA"), Department of State, Department of Defense, and Department of Treasury. SAAB MORAN's requests are a fishing expedition requesting materials outside the possession of the prosecution team and consist of requests for information immaterial to the matter before the Court.  For the reasons set forth below, his Motion should be denied.

## FACTUAL BACKGROUND

On July 25, 2019, SAAB MORAN was indicted by a federal grand jury in the Southern District Court of Florida, along with co-defendant Alvaro Pulido Vargas, with one count of conspiracy to commit money laundering and seven substantive counts of laundering monetary instruments.[1]  On June 12, 2020, SAAB MORAN was detained in the Republic of Cabo Verde, an island west of continental Africa, at the request of the United States.  The United States thereafter submitted a formal extradition request, which SAAB MORAN opposed.  After sixteen months of litigation, SAAB MORAN was extradited to the United States on October 16, 2021.  Exhibits 2 and 3 are decisions of the Cabo Verdean courts ordering the extradition of SAAB MORAN and translations of the decisions.  Because the United States and the Republic of Cabo Verde do not have an extradition treaty, the Cabo Verdean court decisions focused on an analysis of Cabo Verde laws and applicable international treaties.  During those extradition proceedings, SAAB MORAN argued, in part, that he was immune from extradition to the United States due to his diplomatic status with Venezuela.  *Id.*  Those arguments were not persuasive, and both the Supreme Court and Constitutional Court of Cabo Verde found that while SAAB MORAN was a special envoy for Venezuela to Iran, he was not immune from extradition during his transit through Cabo Verde on his travels to Iran, and therefore, he should be extradited.  *Id.*  Following these rulings, the Minister of Justice for Cabo Verde formally ordered SAAB MORAN's extradition.

While those extradition proceedings were ongoing, SAAB MORAN's counsel filed a motion to vacate the order conferring fugitive status and for leave for a special appearance to challenge the Indictment.  [DE 10.]  After briefing on the motion, the Court denied the motion to

---

[1] On November 1, 2021, the United States moved this Court to dismiss counts two through eight of the indictment consistent with assurances made to the Republic of Cabo Verde during the extradition process.  The Court dismissed these counts the same day.  [DE 63-4].

specially appear to challenge the Indictment, pursuant to the fugitive disentitlement doctrine.  [DE 46.]  SAAB MORAN appealed that ruling to the Eleventh Circuit Court of Appeals.  During the pendency of the appeal, however, SAAB MORAN was extradited to the United States from Cabo Verde and made his appearance before this Court.  After full briefing and oral argument on the appeal, the Eleventh Circuit found that, because SAAB MORAN was no longer a fugitive, the issue of fugitive disentitlement was moot.  With respect to SAAB MORAN's claim that he was a foreign diplomat and immune from prosecution, the Eleventh Circuit determined that the parties had not had the opportunity to fully develop the record on that issue, and this Court did not have the opportunity to weigh the evidence. Therefore, on June 2, 2022, the Eleventh Circuit remanded the case to this Court in order to consider in the first instance whether SAAB MORAN is a foreign diplomat and immune from prosecution.  [DE 102.]

The government is aware of its *Brady* and discovery obligations.  It has and will continue to satisfy its ongoing discovery obligations.  In response to the standing discovery order and SAAB MORAN's *Brady* requests upon his appearance in the Southern District of Florida, including the June 23, 2022 Letter, the United States provided the following documents and information to SAAB MORAN:  1) documents that were purportedly in SAAB MORAN's possession upon his detention in Cabo Verde; 2) copies of SAAB MORAN's passports that were believed to be in SAAB MORAN's possession upon his detention in Cabo Verde; 3) summaries of SAAB MORAN's own interviews with the United States; 4) an affidavit from the pilot of the plane that SAAB MORAN was on when he was detained in Cabo Verde; and 5) an investigation closing report from Cabo Verde concerning SAAB MORAN's allegations against Cabo Verde law enforcement officers.

In addition, the United States requested that the law enforcement agencies that were part of the prosecution team provide for review any reports, cables or other internal documents from April 1, 2018, through October 31, 2021, that contained SAAB MORAN's name and any of the various search terms agreed to by counsel for SAAB MORAN, including oil, Iran, special envoy, and diplomatic immunity.  As a result of that search, the United States provided SAAB MORAN with one redacted report from DEA and information concerning the tip that led to SAAB MORAN's detention in Cabo Verde.  The United States also requested that the lead DEA case agent, the DEA task force officer who is co-case agent on the matter, and the lead FBI case agent review their electronic communications and notes to see if they possessed any *Brady* material; they did not identify any such materials.

The United States also agreed to go outside the prosecution team to review emails and attached documents in the possession of the Department of Justice Office of International Affairs ("OIA"), the Department of State, and from a Department of Justice civil attorney involved in providing assistance with the extradition from Cabo Verde. The United States has reviewed over 4,000 documents and provided potentially responsive documents to the relevant stakeholders for a review of any potential privilege claims.  In addition, the United States has conducted and continues to conduct prudential search reviews of classified material and noticed the Court that it anticipates possible CIPA litigation.

## **ARGUMENT**

SAAB MORAN's claims of diplomatic immunity have already been fully litigated and denied in Cabo Verde, where he was initially detained.  During those proceedings, the Cabo Verdean courts considered and rejected Moran's claims of diplomatic immunity, including his argument that he was entitled to immunity because he was in Cabo Verde in transit to Iran as a

purported diplomat for the Maduro regime.  SAAB MORAN's Motion requests materials related to the same defense of diplomatic immunity, presumably in order to second guess the decision of Cabo Verde in extraditing him to the United States or, alternatively, claiming he has some kind of immunity in the United States.  As previously briefed to this Court in the government's Response in Opposition to Defendant's Motion to Vacate Order Conferring Fugitive Status and for Leave for Special Appearance to Challenge Indictment [DE 24], SAAB MORAN has no diplomatic status in the United States.  Nor should this Court depart from Eleventh Circuit precedent and second guess the legitimacy of a foreign country's decision to extradite an individual which would be contrary to the Act of State Doctrine.  *United States v. Knowles*, 390 Fed.Appx. 915, 928 (11th Cir. 2010).  The appropriate analysis for the Court at this juncture is whether SAAB MORAN's extradition violated his due process.  The government submits that there is no set of facts related to SAAB MORAN's purported diplomatic status that could give rise to such a violation.  *See United States v. Alvarez-Machain*, 504 U.S. 655, 662, 670 (1992).  Consequently, SAAB MORAN's requests are nothing more than a fishing expedition across various agencies of the government for documents, outside the possession of the prosecution team, that are unable to yield any information that would be material to his guilt, innocence, or any punishment.

   *1. Legal Standard*

   The Government's discovery obligations are established by case law, the Jencks Act, and Federal Rule of Criminal Procedure 16.  Under *Brady v. Maryland*, the Government is required to disclose to the defense evidence in the prosecution's possession that is both favorable to the accused and material either to guilt or to punishment. 373 U.S. 83, 87 (1963).  The obligation to disclose favorable evidence covers exculpatory evidence, as well as information that can be used to impeach government witnesses. *Giglio v. United States*, 405 U.S. 150, 154 (1972).  Under Rule

16(a)(1), the government is required to disclose, upon request of the defendant, evidence that is "within the government's possession, custody, or control" and is "material to preparing the defense." Fed. R. Crim. P. 16.

The government's obligations under *Brady* and Rule 16 extend only to all information within its possession and control that is material and exculpatory to that defendant. *Brady*, 373 U.S. at 83. The government "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). Central to this query is the make-up of the prosecution team, addressed below.

SAAB MORAN's requests for documents related to his purported diplomatic status while travelling from Venezuela to Iran are not *Brady*. Any information regarding said status would not prevent his prosecution in the current matter. SAAB MORAN is no longer in transit from Venezuela to Iran. SAAB MORAN has no diplomatic immunity in the United States and the act of state doctrine precludes this Court from second guessing a foreign sovereign's extradition decision. Nor could any set of facts related to the United States' alleged knowledge of his purported diplomatic status give rise a claim that his valid extradition from Cabo Verde somehow violated his due process. The defendant's *Brady* requests are nothing more than a fishing expedition.

2. *SAAB MORAN Has No Diplomatic Status in the United States and Does Not Benefit from Diplomatic Immunity while in the United States*

As SAAB MORAN enjoys no diplomatic immunity in the United States, the motion to compel should be denied. SAAB MORAN cannot claim any valid diplomatic immunity in the United States. SAAB MORAN has alleged, at various different times, that he is a diplomat, a head of a mission, or a "special envoy" for the Maduro regime of Venezuela. As an initial matter, the United States does not recognize the Maduro regime as the government of Venezuela and

accordingly no member of the Maduro regime or its purported representatives enjoys any diplomatic immunity in the United States.  Moreover, merely being a diplomat from one country to another (non-U.S. country) does not afford any immunity from prosecution by the United States for violating the laws of the United States, let alone immunity for crimes committed prior to SAAB MORAN's alleged appointment as "special envoy," or any other alleged immunity.

Despite his claims that he is a diplomat or "special envoy," SAAB MORAN does not enjoy immunity in the United States under the Diplomatic Relations Act, 22 U.S.C. §§ 254a-254e, or the International Organizations Immunities Act, 22 U.S.C. §§ 288–288l.  Under the International Organizations Immunities Act, 22 U.S.C. §§ 288–288l, representatives of foreign governments in or to designated international organizations have immunity from "legal process relating to acts performed by them in their official capacity and falling within their functions as such representatives" once they have been notified to and accepted by the Secretary of State as such. *Id.* §§ 288d(b), 228e(a). Further, the Diplomatic Relations Act requires dismissal of actions brought against individuals entitled to diplomatic immunity. 22 U.S.C. §§ 254d ("Any action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention on Diplomatic Relations, under sections 254b or 254c of this title, or under any other laws extending diplomatic privileges and immunities, shall be dismissed. Such immunity may be established upon motion or suggestion by or on behalf of the individual, or as otherwise permitted by law or applicable rules of procedure").  However, SAAB MORAN has never been entitled to such immunity under either the Diplomatic Relations Act or the International Organizations Immunity Act.    As noted by the attached Exhibit 1, SAAB MORAN has never been notified to the Department of State as a member of any foreign mission in the United States, including Venezuela's bilateral mission, the Delegation of the African Union

Mission at Washington, DC, or the Office of the Permanent Observer for the African Union to the United Nations, or as a representative in or to any designated international organization.  Exhibit 1.  As such, the Department of State "Office of Foreign Missions is not aware of a basis for Alex Nain SAAB MORAN to enjoy immunity from the criminal or civil jurisdiction of the United States."  *Id.*  "[C]ourts have generally accepted as conclusive the views of the State Department as to the fact of diplomatic status." *Abdulaziz v. Metropolitan Dade County*, 741 F.2d 1328, 1331 (11th Cir. 1984) (citing *Carrera v. Carrera*, 174 F.2d 496, 497 (D.C. Cir. 1949)); *In re Baiz*, 135 U.S. 403, 432 (1890) (The Court noted that it does "not assume to sit in judgment upon the decision of the executive in reference to the public character of a person claiming to be a foreign minister, and therefore have the right to accept the certificate of the State Department that a party is or is not a privileged person ...."); 22 U.S.C. § 2656 (Secretary of State's responsibility to manage foreign affairs).

Unable to establish that he has any diplomatic status in the United States, SAAB MORAN instead incorrectly asserts that he is entitled to "*in transitu* diplomatic immunity" under Article 40 of the Vienna Convention on Diplomatic Relations (VCDR).  [DE 123, at 12.]  We note at the outset that even where Article 40 of the VCDR does apply, the transit state is only required to accord a diplomatic agent "inviolability and such other immunities as may be required to ensure his transit or return."[2]  Article 40 does not provide for full criminal immunity in the transit state, require that the transit state dismiss (or not bring) criminal charges against the diplomatic agent, or speak at all to the diplomatic agent's guilt, innocence, or punishment.  Article 40 is simply designed to facilitate the travel of a diplomat to and from the diplomat's home and diplomatic

---

[2] Article 40 of the VCDR provides in pertinent part that "[i]f a diplomatic agent passes through or is in the territory of a third State, which has granted him a passport visa if such visa was necessary, while proceeding to take up or to return to his post, or when returning to his own country, the third State shall accord him inviolability and such other immunities as may be required to ensure his transit or return."

posting.   And for the reasons outlined below, SAAB MORAN's assertion of this "transit immunity" is fatally flawed.

First, as discussed in greater detail below, the Cabo Verdean courts have already considered SAAB MORAN's diplomatic immunity claims as part of the extradition process.  Any transit immunity to which SAAB MORAN could possibly enjoy in the United States must be an extension of the transit immunity he enjoyed when transiting Cabo Verde.  Yet, the Cabo Verde courts did not find that Cabo Verde had an obligation under the VCDR to afford SAAB MORAN the immunity which he now seeks in the United States.  For a U.S. court to now determine that SAAB MORAN is entitled to transit immunity would necessarily involve the U.S. court second guessing Cabo Verde's own determinations about its international obligations to afford immunity to SAAB MORAN.

Second, SAAB MORAN would not benefit from the protections afforded by the VCDR because the United States does not consider SAAB MORAN to be a diplomatic agent of Venezuela.  As noted above, SAAB MORAN was appointed by the Maduro regime, and the United States does not recognize the Maduro regime as the government of Venezuela.  As a leading authority on the VCDR has noted, "where the transit State...does not recognize as a government the authorities who accredited the diplomat, it will in consequence not regard that person as a diplomatic agent at all, so that it will not regard itself as bound by the duties in Article 40 so far as he is concerned."  Eileen Denza, *Diplomatic Law: Commentary on the Vienna Convention on Diplomatic Relations,* 370-371 (4th ed. 2016).  For the Court to decide that SAAB MORAN is a diplomatic agent entitled to transit protections under Article 40 of the VCDR would run contrary not only to deference afforded to the Department of State's views as to the diplomatic status of

foreign officials, but also intrude on the President's exclusive authority to recognize a foreign government.  *See, e.g., Zivotofsky ex rel. Zivotofsky v. Kerry*, 135 S. Ct. 2076, 2089 (2015).

Third, even if this Court were inclined to take the unprecedented steps in reviewing a foreign state's decision concerning its own obligations to afford diplomatic immunity and recognizing a diplomatic agent appointed by a regime that the United States does not recognize as the government of a foreign state, Article 40 still would not provide immunities to SAAB MORAN in this instance.  SAAB MORAN cannot in any meaningful sense be considered for purposes of Article 40 to be passing through the United States while proceeding to take up a purported diplomatic post in Iran.  He is in the United States not as part of his travel to Iran, but because he was extradited to the United States by Cabo Verde.  And even if his extradition to face criminal proceedings in the United States were charitably viewed as a mere detour in his transit to his purported diplomatic posting in Iran, the transit protections afforded by Article 40 only apply if the transit State (here the United States) has granted the diplomatic agent "a passport visa if such visa was necessary."  SAAB MORAN has not obtained such a visa for transit through the United States.  SAAB MORAN's immunity argument is therefore not supported by the very provision of the VCDR which he relies upon for his immunity claim.

Consequently, any documents related to the knowledge of the various agencies of the United States of SAAB MORAN's purported role as a diplomat or engagement with Iran on behalf of the Maduro Regime would not be relevant to any legal defense SAAB MORAN might have. He could not and did not have diplomatic immunity in the United States, nor does he benefit while in the United States from the more limited "in transit" protections afforded by Article 40 of the VCDR, and there is no bearing that any document would have as to that conclusion.

3. *The Act-of-State Doctrine Bars the Court from Reviewing a Foreign Country's Extradition Decision*

Following his arrest in Cabo Verde, SAAB MORAN fully litigated his diplomatic immunity claims throughout an approximately 16-months long extradition process before the Cabo Verde judicial system. This included appeals to Cabo Verde's highest court. During the process, SAAB MORAN was assisted by his choice of counsel and the resources of the Maduro regime. At the conclusion of the 16-month process, the Constitutional Court of Cabo Verde denied the last of SAAB MORAN's appeals and certified the completion of the proceedings regarding his extradition to the United States.  *See* Exhibit 2, *Alex Nain Saab Moran v. Supreme Court of Justice*, No. 39/2021, Ruling of Constitutional Court on Extradition of Alex Nain Saab Moran (Cabo Verde Sept. 7, 2021); *see also* Exhibit 3, *Alex Nain Saab Moran v. Barlavento Court of Appeal*, No. 28/2021, Judgment of Supreme Court of Justice on the Extradition of Alex Nain Saab Moran (Cabo Verde Mar. 17, 2021). The Cabo Verde Minister of Justice then ordered his extradition, resulting in SAAB MORAN's arrival in the United States on October 16, 2021.  This Court should refrain from accepting SAAB MORAN's invitation to second guess Cabo Verde's analysis of its own laws and ultimate decision to execute his extradition.

"The act of state doctrine, which 'rests at last upon the highest considerations of international comity and expediency,' 'precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory.'" *Knowles*, 390 Fed.Appx. at 928 (*quoting Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401, 417–18, 84 S.Ct. 923, 926, 935, 11 L.Ed.2d 804 (1964)). "Under the doctrine, an official act of a foreign sovereign performed within its own territory thus 'must be accepted by our courts as a rule for their decision.'" *Knowles*, 390 Fed.Appx. at 928 (*quoting Ricaud v. Amer. Metal Co.*, 246 U.S. 304, 309, 38 S.Ct. 312, 314, 62 L.Ed. 733 (1918)).

The decision to extradite an individual from a country is an official act by a foreign sovereign.  *See Knowles*, 390 Fed.Appx. at 928 ("we conclude that the Ministry of Foreign Affairs' consent to Knowles' extradition in Case 524 was an 'official act of a foreign sovereign'"); *see also United States v. Trabelsi*, 28 F.4th 1291, 1299-1300 (D.C. Cir. 2022) ("the final decision in terms of extradition is taken solely by the Government; this is a sovereign act"); *Reyes-Vasquez v. U.S. Atty. Gen.*, 304 Fed. Appx. 33, 36 (3d Cir. 2008) (presidential decree extraditing individual is an "official act of a foreign sovereign").  Courts must abstain from questioning the validity of "official acts of a foreign sovereign" under the dictates of the act of state doctrine.  *Knowles* 390 Fed.Appx. at 928 (*citing W.S. Kirkpatrick & Co., Inc. v. Envtl. Tectonics Corp., Int'l,* 493 U.S. 400, 405, 110 S.Ct. 701, 704, 107 L.Ed.2d 816 (1990).

In *Knowles*, the Eleventh Circuit refused to second guess Bahamian authorities in authorizing an extradition, holding that doing so "would ... require a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory," and that "the act of state doctrine applies and prohibits us from evaluating the legitimacy of Knowles' extradition." *Knowles*, 390 Fed.Appx. at 928 (*citing W.S. Kirkpatrick*, 493 U.S. at 405, 110 S.Ct. at 706 (quotation marks omitted). "Accordingly, Knowles' challenge to his extradition must fail." *Id.*  Similarly, any challenge SAAB MORAN makes must also fail.

Courts across the country have held the act of state doctrine precludes courts from reviewing a foreign sovereign's extradition decision.  *See United States v. Trabelsi*, 28 F.4th at 1299-1300 (giving deference to Belgian executive's extradition order pursuant to act-of-state doctrine); *Graham v. Young*, 886 F.3d 700, 704-05 (8th Cir. 2018) (stating, in dicta, that review of a foreign country's dual criminality determination would violate the act-of-state doctrine); *Reyes-Vasquez*, 304 F. App'x at 36 (holding that decree by President of the Dominican Republic granting

extradition is not reviewable as a "public act[] a recognized sovereign power committed within its own territory" within the meaning of the act-of-state doctrine); *United States v. Merit*, 962 F.2d 917, 921 (9th Cir. 1992) (relying on act-of-state doctrine to reject defendant's argument that extradition was procedurally improper because South Africa's executive surrendered him without issuing a warrant).

To the extent the act of state doctrine does not apply to a particular extradition challenge, courts still generally defer to a foreign government's decision to extradite a defendant to the United States. *See Garcia-Godos v. Warden*, 853 F. App'x 404, 407 (11th Cir. 2021) (noting that: "In *Johnson* [*v. Browne*, 205 U.S. 309 (1907)], the Supreme Court stated that the decision as to whether the extradited defendant's crime was an extraditable offense under the extradition treaty between the United States and Canada "was a matter for the decision of the [Canadian] authorities." 205 U.S. at 316); *United States v. Garavito-Garcia*, 827 F.3d 242, 247 (2d Cir. 2016) (recognizing that "[i]t is well established that, 'although courts of the United States have authority to determine . . . whether an accused should be extradited from the United States, . . . our courts cannot second-guess another country's grant of extradition to the United States'") (citation omitted); *United States v. Campbell*, 300 F.3d 202, 209-10 (2d Cir. 2002) ("interpret[ing] *Johnson v. Browne* to mean that our courts cannot second-guess another country's grant of extradition to the United States,"); *Casey v. Dep't of State*, 980 F.2d 1472, 1476-78 (D.C. Cir. 1992) (concluding that "it seems clear to us that, at a minimum, *Johnson* means that an American court must give great deference to the determination of the foreign court in an extradition proceeding,"); *United States v. Van Cauwenberghe*, 827 F.2d 424, 429 (9th Cir. 1987) ("defer[ring] to the Swiss Federal Tribunal's decision as to Van Cauwenberghe's extraditability under the Treaty"); *McGann v. U.S.

*Bd. Of Parole*, 488 F.2d 39, 40 (3d Cir. 1973) ("The holding of *Johnson v. Browne* . . . precludes any review of the Jamaican court's decision as to the extraditable nature of the offense . . . .").

Here, where SAAB MORAN was extradited pursuant to Cabo Verdean law, as opposed to a treaty between the United States and Cabo Verde, there is even more cause to defer to Cabo Verde's analysis of its own laws.  *See* Exhibits 2 and 3; *see also Grin v. Shine,* 187 U.S. 181, 185, 190 (1902) ("[I]t can hardly be expected of us that we should become conversant with the criminal laws of [the requesting country], or with the forms of warrants of arrest used [in that country] for the apprehension of criminals."); *Cornea v. U.S. Att'y Gen.,* 771 F. App'x 944, 947 (11th Cir. 2019) (relying on the "authoritative statement" provided by the Greek government regarding its criminal procedure law to conclude that extradition was not barred under the relevant treaty's lapse-of-time provision); *Basic v. Steck,* 819 F.3d 897, 901 (6th Cir. 2016) (in an extradition case, refusing to "second guess [Bosnia's] determination" that documents amounted to valid warrant); *Skaftouros v. United States,* 667 F.3d 144, 156, 160 n.20 (2d Cir. 2011) (in an extradition case, noting that "[a]ny argument[s] regarding the [foreign] country's compliance with its own laws . . . are properly reserved for the courts of that country," and that "we defer to the Greek courts, which may consider whether Skaftouros or the Greek prosecutors have the better of the argument" regarding whether a Greek arrest warrant was invalid as a matter of Greek law); *Spatola v. United States,* 925 F.2d 615, 618 (2d Cir. 1991) (when reviewing a foreign court's judgment of conviction in an extradition case, noting that, "when possible, the decisions of foreign tribunals should be given effect in domestic courts") (citation omitted); *In re Assarsson,* 635 F.2d 1237, 1244 (7th Cir. 1980) ("refus[ing] to review [Sweden's] compliance with [its] criminal procedure").

Similarly, SAAB MORAN's attempt to relitigate his extradition will fail. Regardless of his alleged role as a diplomat, head of mission, or special envoy, SAAB MORAN was extradited from

Cabo Verde to the United States. This process was blessed by the Cabo Verde Courts and finalized through action taken by the Cabo Verde Foreign Minister. *See* Exhibits 2 and 3.  The act of state doctrine precludes the Court from overturning these valid public acts of a foreign sovereign. Consequently, SAAB MORAN's requests to obtain materials related to such a defense are requests for materials that are immaterial to the ultimate question at issue and do not give rise to *Brady* and certainly do not give rise to expanding the obligation of the prosecution team to look for materials outside its possession.

      *4.  SAAB MORAN's Extradition from Cabo Verde Did Not Violate His Due Process*

      SAAB MORAN went through thorough sixteen-month extradition judicial process in Cabo Verde prior to his arrival in the United States, where he enjoys no immunity, *see* Exhibits 2 and 3, and cannot legitimately challenge his presence before the Court to face the criminal charge against him by claiming he did not receive proper due process.  *See United States v. Alvarez-Machain*, 504 U.S. 655, 670 (1992) (concluding that, where there is no violation of an extradition treaty, "the court need not inquire as to how respondent came before it," and even a defendant's "forcible abduction does not . . . prohibit his trial in a court in the United States for violations of the criminal laws of the United States").  SAAB MORAN's presence before the Court clearly falls within the *Ker-Frisbie* doctrine set by the United States Supreme Court and therefore, he has no legal challenge to his presence before the Court.  *See United States v. Darby*, 744 F.2d 1508, 1530-31 (11th Cir. 1984) ("[T]he *Ker-Frisbie* doctrine, which holds that a defendant cannot defeat personal jurisdiction by asserting the illegality of the procurement of his presence.").  The United States Supreme Court, in *Ker v. Illinois*, held with other high authorities in finding that "forcible abduction is no sufficient reason why the party should not answer when brought within the jurisdiction of the court which has the right to try him for such an offence, and presents no valid

objection to his trial in such court." 119 U.S. 436, 444 (1886). In *Frisbie v. Collins*, the Supreme Court held that "the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction,'" and that "due process of law is satisfied when one present in court is convicted of crime after having been fairly apprised of the charges against him and after a fair trial in accordance with constitutional procedural safeguards." 342 U.S. 519, 522 (1952).

As SAAB MORAN went through an extensive judicial extradition process in Cabo Verde to arrive in the United States and appear before this Court, there is nothing that can be said to "shock the conscience" or consist of outrageous government conduct that would require the Court to release him. *See United States v. Noriega*, 117 F.3d 1206, 1214 (11th Cir. 1997); *see also United States v. Struckman*, 611 F.3d 560, 573-74 (9th Cir. 2010) (no exception to the *Ker-Frisbie* doctrine where defendant did not suffer any prejudice from U.S. government official's alleged misrepresentations to Panama, which had deported defendant to the United States at the latter's request). Because SAAB MORAN lacks any claim to a due process violation in his extradition to the United States, there is no material in the possession of the United States government concerning his alleged diplomatic status in Venezuela that could be produced as *Brady* material to preclude the Court from going forward with his prosecution[3] and certainly do not give rise to expanding the obligation of the prosecution team to look for materials outside its possession. Therefore, the Motion should be denied.

5.  *The Requests to Review Documents Outside of the Prosecution Team Should Be Denied*

The Motion should also be denied as SAAB MORAN seeks to compel the United States to produce materials that have already been produced and to undergo a review of materials that reside

---

[3] Indeed, the courts in Cabo Verde, for purposes of his extradition, assumed SAAB MORAN was a special envoy and ordered his extradition regardless. *See* Exhibit 2, at 30-34; *see also* Exhibit 3, at 94-107.

outside the prosecution team as part of a fishing expedition to look for documents that cannot aid in his claim of diplomatic immunity.

As an initial matter, the government has already produced materials relating to its August 15, 2022, summary letter and produced responsive materials withing the custody, control, and possession of the government agencies involved in the investigation of SAAB MORAN, including the Drug Enforcement Administration ("DEA"), the Federal Bureau of Investigation ("FBI"), Homeland Security Investigations ("HSI"), and Immigration and Customs Enforcement ("ICE"). SAAB MORAN's Motion, however, attempts to extraordinarily expand the definition of the "prosecution team" for purposes of discovery in this case. SAAB MORAN, on June 23, 2022, requested the prosecution team "undertake a complete review of its documents and files—and those of its law enforcement partners, including but not limited to the Drug Enforcement Administration ("DEA"), the Federal Bureau of Investigation ('FBI'), Homeland Security Investigations ("HSI"), Immigration and Customs Enforcement ("ICE"), related Task Force Agents, the Department of State, the Department of Defense, the Department of Treasury, the U.S. Coast Guard, as well as assisting foreign agents/agencies in Cape Verde, Colombia, Venezuela and elsewhere and any other agency or government that was allied with, cooperated with or assisted your investigation or prosecution," labeled the "Investigation Partners." [DE 123-4, Ex. C.] The letter outlines nine categories of documents SAAB MORAN requests from the "Investigative Partners." [*Id.*] SAAB MORAN's current Motion continues these expansive requests, seeking materials held by OIA, NSD, the Department of State, the Department of Defense, and the Department of the Treasury.[4] The apparent bases on which SAAB MORAN

---

[4] In yet another discovery request sent by the defendant's counsel to the government on September 7, 2022, SAAB MORAN has again expanded his view of the prosecution team to include the DEA Special Operations Division ("DEA SOD") merely because it provided a tip regarding SAAB MORAN's travel to Iran. Nothing more is alleged regarding DEA' role in the investigation or prosecution of SAAB MORAN.

grounds his requests, as outlined at Court hearings, several meetings, and phone calls between counsel for the defendant and the prosecutors in this matter, is (i) a book excerpt from the former Secretary of Defense, Mark Esper, written after he concluded any role with the government and twenty-three months after the defendant's arrest, [DE 123-3, Ex. B]; (ii) news articles about OFAC seizing oil with DEA's assistance, [DE 123, at 14]; and (iii) the beliefs of counsel for SAAB MORAN based on their prior experiences and what they assume might exist, [DE 123, at 13-15]. These meritless grounds for the defendant's requests highlight their nature as a fishing expedition and that the so-called "Investigative Partners" are not part of the prosecution team, despite SAAB MORAN's claims and wishes to the contrary.

"While Rule 16(a) only applies to materials within the 'possession, custody, or control of the government,' courts have found that 'possession, custody, or control of the government' requirement includes materials in the hands of a governmental investigatory agency closely connected to the prosecutor." *See, e.g., United States v. Scruggs*, 583 F.2d 238, 242 (5th Cir. 1978)."  The Fifth Circuit has held that "*Brady* and its progeny apply to evidence possessed by a district's "'prosecution team,' which includes both investigative and prosecutorial personnel." *United States v. Antone*, 603 F.2d 566, 569 (5th Cir. 1979) (citations omitted).   The Eleventh Circuit in *United States v. Meros* reiterated that same approach in defining the prosecution team when it held that "*Brady*, then, applies only to information possessed by the prosecutor or anyone over whom he has authority." 866 F2d 1304, 1309 (11th Cir 1989).  The Eleventh Circuit in *United States v. Trevino*, in discussing the discovery obligations of the government and any *Brady* obligations associated thereto stated that "'the government' means, the defendant's adversary, *the prosecution*."  556 F.2d 1265, 1271 (11th Cir 1977) (emphasis added).

SAAB MORAN seeks to improperly expand the scope of "prosecution team" to include *any* government agency or entity that has mentioned his name and Iran, Russia, oil, or gold in the same breath, or referred to or had an interest in Venezuela's oil or sanctions, even though none of these agencies were involved in investigating SAAB MORAN for his charged crimes or have appeared against SAAB MORAN in Court as his adversary. *See United States v Saab Moran*, 19-cr-20450-RNS, Criminal Docket. They are not part of the prosecution team. "Knowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor, for the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require us to adopt a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) ((citations omitted). And while the Fifth Circuit, has held that there is no "per se rule to determine whether information possessed by one government entity should be imputed to another" and it is "'a case-by-case analysis of the extent of interaction and cooperation between the two governments,'" SAAB MORAN's reasoning for expanding the normal definition of prosecution team is based only on speculative beliefs and conjecture from news articles and a book excerpt, not facts. *Moon v. Head*, 285 F.3d 1301, (11th Cir. 2002) (citing *United States v. Antone*, 603 F.2d 566, 570 (5th Cir. 1979). These beliefs and assumptions are not enough to impute any potential knowledge of some type of diplomatic status to the prosecution team. *Id.* ("[O]ne governmental entity's possession of favorable information should not necessarily be imputed to another."); *United States v. Locascio*, 6 F.3d 924, 949 (2d Cir. 1993) ("We will not infer the prosecutors' knowledge simply because some other government agents knew about the report."); *Johnston v. Love*, 940 F. Supp. 738, 768-71 (E.D. Pa. 1996) (declining to impute to the

state attorney the federal prosecutor's knowledge of a witness immunity agreement because the federal prosecutor was not an agent for the State, did not consult or obtain the consent of the State, and did not bind the State when he entered into the immunity agreement with the witness).

In *United States v. Loera*, the district court in the Eastern District of New York held that OIA and the Department of State were not part of the prosecution team, even though they were involved in the relevant extradition.  No. 09 Cr. 466, 2017 WL 2821546, *7 (E.D.N.Y. June 29, 2017) ("Here, State and OIA are not part of the prosecution team and therefore not subject to Rule 16.  Contrary to defendant's argument, these agencies are not so closely aligned with the prosecution as to be considered part of the prosecution team. Certainly, in one way or another, there must be contact between the diplomatic arms of the U.S. Government seeking extradition of a defendant and the U.S. Attorney's Office that intends to prosecute the extradited defendant, but that contact does not intimately involve the agencies nor align the agencies for all intents and purposes.") (citing *United States v. Meregildo*, 920 F. Supp. 2d 434, 441-42 (S.D.N.Y. 2013), aff'd sub nom. *United States v. Pierce*, 785 F.3d 832 (2d Cir. 2015) ("Interacting with the prosecution team, without more, does not make someone a team member.")); *see also Meregildo*, 920 F. Supp. 2d at 442 (finding that circumstances that make another agency member part of the prosecution team include "whether the individual actively investigates the case, acts under the direction of the prosecutor, or aids the prosecution in crafting trial strategy").  Therefore, SAAB MORAN's attempt to expand the definition of the prosecution team to any government entity having knowledge of him, his supposed diplomatic status, or connection to Venezuela and Iran should be denied.  OIA and the Department of State were involved in the extradition of SAAB MORAN to the United States, they are not involved in the prosecution of SAAB MORAN.

Neither is OFAC nor the Department of the Treasury part of the prosecution team. While OFAC has sanctioned SAAB MORAN and several other high level Venezuelan officials, OFAC was not part of the prosecution team that gathered the evidence in order to charge SAAB MORAN in this criminal case.   SAAB MORAN's Motion does not and cannot allege to the contrary. Instead, the Motion merely notes that SAAB MORAN was sanctioned and that in doing so, OFAC thanked DEA and CBP for "coordinating" with OFAC.   OFAC sanctions are separate and distinct from criminal prosecutions and OFAC had no role in the investigation and prosecution of SAAB MORAN.   Requesting documents in the possession of the Department of the Treasury is nothing more than SAAB MORAN grasping at straws.

Additionally, the Department of Defense and the United States Coast Guard were not part of the law enforcement contingent of the prosecution team investigating SAAB MORAN's criminal conduct.   In support of his position, SAAB MORAN's Motion cites a selection of pages from a book written by former Secretary of Defense, Mark Esper, that discuss the United States' interest in Venezuela. [DE 123-3, Ex. B.]   Indeed, SAAB MORAN's Motion notes that former Secretary Esper "confess[es] that Mr. Saab was en route to Iran on a 'special mission.'" [DE 123, at 16.]   The Motion conveniently leaves out the beginning of the sentence where former Secretary Esper states SAAB MORAN was "*reportedly* on a special mission." [*Id.*, at 19 (page. 327) (emphasis added)].   This book was published some twenty-three months after SAAB MORAN's arrest where he himself began claiming his special mission status.   A book written by a former government official hardly bears any merit in determining whether the Department of Defense is part of the prosecution team. Nor does the well reported fact that the United States government deployed vessels to prevent an escape by SAAB MORAN from Cabo Verde.   Nothing alleged by

SAAB MORAN in his Motion comes close to positing that the Department of Defense was involved in any strategic decisions regarding the investigation or prosecution of SAAB MORAN.

Finally, the NSD is not part of the prosecution team either.  No trial attorney from NSD participated in the investigation and charging of SAAB MORAN.  Nor for that matter does SAAB MORAN even allege such action.  His Motion merely cites to NSD's involvement regarding the forfeiture of oil tankers that occurred two months after SAAB MORAN was detained in Cabo Verde.  [DE 123, at 14-15.]  SAAB MORAN's Motion merely makes the baseless conclusion that because NSD was involved in the seizure of Iranian oil tankers en route to Venezuela and the fact that SAAB MORAN had a role in procuring Iranian oil for Venezuela, NSD must have "played a meaningful role in the U.S. government's investigatory and prosecutorial effort against him." [DE 123, at 15.]  This is simply not the case.  NSD cannot be deemed part of the prosecution team based on assumptions conjured from press reports and news articles. As such, any attempt to compel review of NSD, OIA, and the Departments of State, Defense, and Treasury, should be denied.  *Avellino*, 136 F.3d at 255.  It should be noted that the United States has reviewed materials from OIA and is currently reviewing materials from the Department of State for any alleged *Brady* material, regardless of their lack of any role in the prosecution team, and the potentially responsive documents have been provided to the relevant stakeholders for a review of any potential privilege claims.

While attempting to unreasonably expand the definition of the prosecution team, SAAB MORAN is seeking materials that are clearly a fishing expedition in search for alleged *Brady* material.  "A prosecutor has no duty to undertake a fishing expedition in other jurisdictions in an effort to find potentially impeaching evidence every time a criminal defendant makes a *Brady* request for information regarding a government witness." *United States v Meros*, 866 F2d 1304,

1309 (11th Cir 1989).  "Nonetheless, the prosecution 'has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.'"  *Id.* (citing *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995)).  The United States has sought alleged *Brady* evidence from the law enforcement agencies that are part of the prosecution team and produced the materials or information fitting into this category pursuant to its discovery obligations.  SAAB MORAN has made an expansive request for information across the breadth of the United States government in the hopes of finding something potentially beneficial to his supposed claims of diplomatic immunity without any legitimate basis. The Motion is a classic fishing expedition to uncover alleged evidence of his role as a purported Venezuelan "special envoy" to Iran or "head of mission" to Iran.  This is despite the fact that SAAB MORAN himself, in three interviews with the United States after April 26, 2018, never mentioned to the United States that he was a "special envoy" or "head of mission."  In fact, a letter from the Venezuelan Foreign Minister, Jorge Arreaza dated June 13, 2020, the day after SAAB MORAN's detention in Cabo Verde does not even refer to SAAB MORAN as a "special envoy" or "head of mission."  [DE 29-4.]  SAAB MORAN's Motion should be denied as the fishing expedition it is.

Despite the lack of legal and factual basis for SAAB MORAN's Motion, the United States has undertaken a review of records not only of the prosecution team, but in an abundance of caution, has even gone beyond the prosecution team to review records for potential production to the defense, including records of OIA, a trial attorney from the Civil Division of DOJ, and unclassified materials from the Department of State.  The United States has even been performing prudential search reviews for potential information far outside the prosecution team.  However, based on SAAB MORAN's lack of diplomatic status or immunity and on the *Ker-Frisbie* doctrine,

no further inquiries relating to his alleged diplomatic immunity defense are required by law.  As such, the Motion should be denied.

<b>CONCLUSION</b>

Based on the above stated facts and law, the United States respectfully asks that the Court deny the Motion as it expands the "prosecution team" beyond what is required by law, is seeking a pure fishing expedition for things that cannot constitute *Brady* material, and the material sought cannot deem SAAB MORAN immune from prosecution.

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By: /s/ *Kurt K. Lunkenheimer*
    Kurt K. Lunkenheimer
    Assistant U.S. Attorney
    Court ID No. A5501535
    99 N.E. 4th Street
    Miami, Florida 33132-2111
    TEL (305) 961-9008
    Kurt.Lunkenheimer@usdoj.gov

GLENN LEON
CHIEF, FRAUD SECTION
Criminal Division
U.S. Department of Justice

By: /s/ *Alexander Kramer*
    Alexander Kramer
    Trial Attorney
    Criminal Division, Fraud Section
    U.S. Department of Justice
    Court ID No. A5502240
    1400 New York Ave. NW
    Washington, DC 20005
    TEL (202) 768-1919
    alexander.kramer@usdoj.gov