United States District Court
Southern District of Florida

| | |
|---|---|
| United States of America, Plaintiff | ) ) ) |
| v. | ) ) Criminal Case No. 19-20450-CR-Scola ) |
| Alex Nain Saab Moran, Defendant. | ) ) |

### Order on the Defendant's Motion to Compel Discovery and Setting Production Schedule

This cause is before the Court upon Defendant Alex Nain Saab Moran's motion to compel the production of discovery materials. (**ECF No. 123**.) Having considered the parties' oral arguments, written submissions, the record, and pertinent legal authorities, the motion is **granted in part and denied in part** as set forth below.

**1. Background**

Saab Moran, a Colombian and Venezuelan citizen, faces one count of conspiring to launder money in violation of 18 U.S.C. § 1956(h), and seven counts of money laundering in violation of 18 U.S.C. § 1956(a)(2)(A). He is alleged, among other things, to have made payments to Venezuelan government officials in exchange for business advantages and to have processed illicit funds through correspondent bank accounts in the United States. (ECF No. 1.)

On August 26, 2019, the Court transferred Saab Moran to fugitive status after he failed to make an initial appearance in this case. While traveling internationally on June 12, 2020, Saab Moran was detained in the Republic of Cape Verde pursuant to an INTERPOL Red Notice and a provisional arrest warrant request made by the Government. (ECF No. 24 at 4.) On June 21, 2021, the Government submitted a request to extradite Saab Moran from Cape Verde. (*Id.* at 5.) He opposed the extradition request, which was heard before the courts there. (*Id.*) Following 16 months of lower court and appellate court decisions, the Cape Verde courts approved the extradition request and Saab Moran was extradited to the United States, where he has remained in federal custody.

While his extradition was pending, this Court denied Saab Moran's request to vacate his fugitive status and also denied his motion for leave to conduct a special appearance to argue that he is immune from prosecution by

reason of diplomatic immunity. (ECF No. 46.) Saab Moran appealed those rulings. (ECF No. 47.) The Eleventh Circuit remanded the matter back to this Court for a determination as to whether Saab Moran is indeed a foreign diplomat immune from prosecution. (ECF No. 102.)

Consequently, this Court ordered Saab Moran to formally file a motion to dismiss the indictment setting forth his arguments on diplomatic immunity. As a part of that effort, Saab Moran now seeks to compel the production of materials possessed by several different federal agencies pursuant to Fed. R. Crim. P. 16 and *Brady v. Maryland*, 373 U.S. 83 (1963).

## 2. Legal Standard

"Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control, and [ ] the item is material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i).

Relatedly, *Brady* requires the Government to disclose, upon request, "evidence that is material either to guilt or punishment." *Mize v. Hall*, 532 F.3d 1184, 1193 (11th Cir. 2008) (citing *Gilliam v. Sec'y for the Dep't of Corrections*, 480 F.3d 1027, 1032 (11th Cir. 2007). That includes the "disclosure of material impeachment evidence as well as material exculpatory evidence." *Id.* (citing *Flores v. Satz*, 137 F.3d 1275, 1278 (11th Cir. 1998)).

## 3. Discussion

Saab Moran's motion seeks to compel items allegedly possessed by the Departments of Defense, Justice, State, and Treasury. (Mot. 1, ECF No. 123.) Within the Department of Justice, Saab Moran seeks information he says resides with the Office of International Affairs ("OIA"), the National Security Division ("NSD"), the Drug Enforcement Agency ("DEA"), and the Federal Bureau of Investigation ("FBI"). (*See* Prop. Order, ECF No. 123-5.) He also seems to seek information possessed by Customs and Border Patrol ("CBP")[1] and Homeland Security Investigations ("HSI"). (*Id.*) Through correspondence with the Government, Saab Moran further requested materials alleged to reside with the Central Intelligence Agency ("CIA") and the U.S. Coast Guard.[2]

---

[1] The Government's brief is silent as to CBP's role in its investigation.
[2] Through such correspondence, Saab Moran has further requested material possessed by "related Task Force Agents," assisting foreign agents/agencies in Cape Verde, Colombia, Venezuela "and elsewhere and any other agency or government that was allied with, cooperated

Specifically, Saab Moran seeks "all information [material to his defense of diplomatic immunity] from the relevant time period, including emails, texts, electronic communications, notes, diplomatic cables, reports, memoranda, or other documents (other than press reports) relating to the following:

(1) Saab Moran's service as a special envoy, or other diplomatic role, on behalf of Venezuela;
(2) whether any other country, or any international or supranational organization, considered Saab Moran to be a special envoy, or as serving in any other diplomatic role, on behalf of Venezuela;
(3) Saab Moran's role in Venezuela's State-to-State activities with Iran, including any exchange between Venezuela and Iran for oil, gold, food, or medical supplies;
(4) travel by Saab Moran to or from Iran, and the purpose of such travel;
(5) the flight, diversion or detention of the plane on which Saab Moran was traveling on or about June 12, 2020, which landed in Cape Verde;
(6) knowledge by U.S. government personnel of Saab Moran's diplomatic status, appointment as a special envoy, or activities taken on behalf of the Venezuelan government; and
(7) documents found on Saab Moran's person or plane following his detention/arrest in Cape Verde, and any inventory or chain-of-custody information relating to such documents."

(Mot. 1-2.)

At a hearing on July 15, 2022—before Saab Moran filed his motion to compel—the Government agreed to produce unclassified materials possessed by the Department of Justice no later than August 15, 2022, except for such material in the possession, custody, or control of OIA. (ECF No. 116.) As to material possessed by OIA or the Department of State, the Government agreed to make its best efforts to obtain and produce unclassified *Brady* material by that same date. Saab Moran says the Government has largely failed to produce anything of substance, which gives way to his motion.

The Government characterizes Saab Moran's requests as nothing but a fishing expedition. The Government says it is aware of its *Brady* obligations and has provided Saab Moran with the following: "1) documents that were purportedly in Saab Moran's possession upon his detention in Cabo Verde; 2) copies of Saab Moran's passports that were believed to be in Saab Moran's possession upon his detention in Cabo Verde; 3) summaries of Saab Moran's

---

with or assisted [the] investigation or prosecution." (ECF No. 123-4.) These entities are not included in Saab Moran's motion.

own interviews with the United States; 4) an affidavit from the pilot of the plane that Saab Moran was on when he was detained in Cabo Verde; and 5) an investigation closing report from Cabo Verde concerning Saab Moran's allegations against Cabo Verde law enforcement officers." (Opp. 3, ECF No. 135.)

In addition, the Government requested that law enforcement agencies forming part of its prosecution team, "review any reports, cables or other internal documents from April 1, 2018 through October 31, 2021, that contained Saab Moran's name and any of the various search terms agreed ty by counsel for Saab Moran, including oil, Iran, special envoy, and diplomatic immunity." (Opp. 4.) That resulted in the production of "one redacted report from DEA and information concerning the tip that led to Saab Moran's detention in Cabo Verde." (*Id.*) The Government says it also "agreed to go outside the prosecution team to review emails and attached documents" possessed by OIA, State, and a civil attorney at the Department of Justice who was involved in providing assistance to the extradition. (*Id.*)

Nevertheless, the Government effectively argues that nothing requires it to make these efforts. According to it, Saab Moran is not a diplomatic agent and is therefore not even entitled to the materials he seeks to compel. (*See* Opp. 9-10.) For that reason, the Government asks the Court to simply deny his motion. While the Court understands the Government's position, it finds this argument to be premature. Saab Moran's diplomatic status is exactly what he seeks out to prove by way of his discovery requests. Foreclosing that defense now—before Saab Moran has had an opportunity to establish it— would simply be unjust.

As such, the Court turns to the Government's arguments on the merits of Saab Moran's motion. The Government argues that it is only required to produce materials that are within the possession, custody, and control of the "prosecution team." (Opp. 17.) That would include, according to it, the DEA, FBI, HSI, and Immigration and Customs Enforcement ("ICE"). (*Id.*) Saab Moran, by contrast, argues that he is entitled to material possessed by "any agency or department that played a role in either the investigation or prosecution" of this case, which he would seemingly argue includes his extradition. (Mot. 10.) Thus, as measured by Saab Moran's motion, the parties disagree as to whether Saab Moran is entitled to material possessed by the Departments of Defense, State, and Treasury, certain branches of the Department of Justice (OIA and NSD), and CBP. (*Compare* Mot. 1 *and* Prop. Order 1 *with* Opp. 20-22.)

At the outset, the Court notes that "the circuits are split on whether a prosecutor's duty to search for *Brady* material extends to agencies that have no interest in the prosecution, extends only to law enforcement entities, extends

only to persons acting under the direction or control of a prosecutor, or extends to *Brady* material outside a prosecutor's jurisdiction." Mark D. Villaverde, *Structuring the Prosecutor's Duty to Search the Intelligence Community for Brady Material*, 88 CORNELL L. REV. 1471, 1524 (2003). The Eleventh Circuit follows the "prosecution team standard," which considers "the relationship between the government entity and the prosecutor's office, looking at the nature of the assistance provided and the extent of cooperation on a particular investigation." *Id.*

That standard stems from *United States v. Antone*, which requires a "case-by-case analysis of the extent of interaction and cooperation between" entities to determine whether they form part of the "prosecution team." 603 F.2d 566, 570 (5th Cir. 1979).[3] The "prosecution team" includes "both investigative and prosecutorial personnel." *Id.* at 569; *United States v. Meros*, 866 F.2d 1304, 1309 (11th Cir. 1989). And this, in turn, encompasses "the prosecutor [himself] [and] anyone over whom he has authority." *Meros*, 886 F.2d at 1309. Members of a "prosecution team" will typically share "resources or labor" and "work together to investigate" the crimes a defendant is accused of committing. *See Moon v. Head*, 285 F.3d 1301, 1310 (11th Cir. 2002).

However, a "defendant's right to the disclosure of favorable evidence [ ] does not create a broad, constitutionally required right of discovery . . . [that includes] the unsupervised right to search through the government's files." *United States v. Jordan*, 316 F.3d 1215, 1251–52 (11th Cir. 2003) (cleaned up).

The bulk of Saab Moran's contested requests concern matters arising from his extradition. It seems that there is little to no guidance within the Eleventh Circuit on the question of whether agencies that partake in extradition efforts form part of the "prosecution team." That does not take away from the fact, though, that extradition proceedings and criminal prosecutions are legally distinct events. Indeed, extradition proceedings conducted in the United States are not even considered to be criminal in nature. *See Martin v. Warden, Atlanta Pen*, 993 F.2d 824, 828 (11th Cir. 1993) ("An extradition proceeding is not an ordinary Article III case or controversy. It clearly is not a criminal proceeding."); Fed. R. Crim. P. 1(a)(5)(A) (excluding extradition proceedings from the Federal Rules of Criminal Procedure).

Department of Justice policy requires prosecutors' extradition requests "to be reviewed and approved by OIA." U.S. Dep't of Just., Just. Manual § 9-15.210 (2018). OIA, then, operates at the prompting of, but independently

---

[3] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted all decisions of the Fifth Circuit handed down prior to October 1, 1981 as binding precedent.

from, Assistant United States Attorneys and Trial Attorneys who prosecute cases. "Acting either directly or through the Department of State, OIA initiates all requests for provisional arrest of fugitives pursuant to extradition treaties. Neither prosecutors nor agents are permitted to contact their foreign counterparts to request the arrest of a fugitive for extradition." *Id.* This clear prohibition shows that OIA generally is not an entity "over whom [a prosecutor] has authority," and thus does not form part of the "prosecution team." *See Meros*, 886 F.2d at 1309.

The same applies to the Department of State, which the Government represents was only involved in Saab Moran's extradition. (Opp. 20.) The facts suggest that OIA worked with State to achieve Saab Moran's extradition, but that does not mean that it was part of the investigation leading to his indictment. *See* U.S. Dep't of Just., Just. Manual § 9-15.210 (2018) ("Acting either directly or through the Department of State, OIA initiates all requests"); Mark Esper, A SACRED OATH: MEMOIRS OF A SECRETARY OF DEFENSE DURING EXTRAORDINARY TIMES 328 (2022) (Esper Extract 20, ECF No. 123-3).

Indeed, the "prosecution team" must be understood in the context of, and measured against, Saab Moran's indictment. *See, e.g.*, *Moon*, 285 F.3d at 1310 (discussing information-gathering by the prosecution team as related to the crime charged). Otherwise, the Government would risk being sent on expeditions for material it did not rely on in bringing a case against a defendant. Such a state of affairs would run contrary to the notion that "[a] prosecutor has no duty to undertake a fishing expedition in other jurisdictions in an effort to find potentially impeaching evidence every time a criminal defendant makes a *Brady* request[.]" *See Meros*, 886 F.2d at 1309.

As noted, Saab Moran's indictment charges him with money laundering and conspiracy to commit money laundering. Nothing in the record suggests that the Department of State and OIA were involved in the underlying investigation leading to those charges. The same is true of the NSD, the Department of Treasury, the Department of Defense and the U.S. Coast Guard. Although the Department of Defense and U.S. Coast Guard may been involved in undertakings to protect Saab Moran in Cape Verde while his extradition was pending (*see* Esper Extract 21), the Government affirms that none of these four entities was involved in the investigation leading to his indictment. (*See* Opp. 21-22.) Even more, the Court is not convinced that the prosecutors in this case had "any authority" over these four entities. *See Meros*, 886 F.2d at 1309.

Accordingly, the Court denies Saab Moran's requests with respect to the Departments of Defense, State, and Treasury, the OIA, the NSD, and—to the extent asserted—the CIA and U.S. Coast Guard. Nevertheless, upon the Government's admission that the following entities formed part of its

"prosecution team," the Court grants Saab Moran's requests as to the DEA, FBI, HSI, and ICE.

The Court's ruling applies to the extent these organizations and/or their subparts collaborated with the prosecutors in this case to procure Saab Moran's indictment. It does not apply to material reflecting efforts made by these organizations and/or their subparts to procure Saab Moran's extradition. Noting that neither party has discussed CBP's role in the underlying investigation, the Court withholds any ruling in respect thereof.

### 4. Conclusion

In sum, Saab Moran's motion (**ECF No. 123**) is **granted in part and denied in part**. With respect to any unclassified *Brady* materials, the Government must:

(i) immediately produce to Saab Moran all materials relating to the summary of information in the August 15, 2022, letter provided to counsel for Saab Moran (with appropriate redactions to protect the identity of any DEA source(s) of information), except for any materials in the exclusive possession, custody, or control of CBP;

(ii) search for all responsive materials and produce to Saab Moran by **October 18, 2022** all unclassified responsive materials in the possession, custody, or control of the "prosecution team" (which encompasses the DEA, FBI, HSI, and ICE), including documents (as defined by Fed. R. Civ. P. 34) emails, texts, memoranda, electronic communications, and notes. By that same date, the Government must disclose to the Defendant the amount of responsive classified responsive materials compelled under this paragraph.

Nothing in this Order should be construed to limit Saab Moran's ability to pursue the material he seeks through other vehicles such as the Freedom of Information Act. Nor should this Order be construed to restrict the Government from producing any material concerning Saab Moran's extradition and/or any material possessed by entities beyond the "prosecution team" upon the Government's own volition.

**Done and ordered** in Miami, Florida, on September 15, 2022.

Robert N. Scola, Jr.
United States District Judge