# EXHIBIT 30



*Embassy of the Islamic Republic of Iran*
*Dakar*

---

*In the Name of Almighty and Merciful God*

**No. 3710/08/AID**
**On: 06 August 2021**

      **The Embassy of the Islamic Republic of Iran in Dakar** presents its respects to the **Embassy of the Republic of Cape Verde in Dakar**, and sends it note 3708/08/AID of 06 August 2021 attached hereto, pertaining to the case of **Mr. Alex Saab, Special Envoy of the Bolivarian Government of Venezuela and considered as an official figure by the Government of the Islamic Republic of Iran.**

      Requesting that it may kindly issue said note to the Ministry for Foreign Affairs and Communities, the Embassy of the Islamic Republic of Iran in Dakar takes this opportunity to once more express its highest consideration to the Embassy of the Republic of Cape Verde in Dakar.

[Signature]



EMBASSY
OF THE REPUBLIC OF CAPE VERDE
DAKAR

---

17, Ave des Ambassadeurs – Fann Résidence – BP 735 Dakar
Tel. 33 825 25 28 / 33 824 05 22 Fax: 33 824 23 14 – Email: iranemb.dkr@mfa.gov.ir





***Embassy of the Islamic Republic of Iran***
***Dakar***

*In the Name of Almighty and Merciful God*

**No. 3710/08/AID**
**On: 06 August 2021**

  The Embassy of the Islamic Republic of Iran in Dakar, whilst expressing its respects to the Ministry of Foreign Affairs and Communities in the Republic of Cape Verde, and following the issue of previous notes concerning Mr. Alex Saab, requests the following explanations as information provided by the Government of the Islamic Republic of Iran in the form of Amicus Curiae or any similar institution within the judicial system of this country which should be presented to the competent legal authorities.

In pursuance with rules set forth under international law, the treaty on the safe passage of diplomats through third countries, which is also enacted within International Conventions, including the Convention on Special Missions (1969), and given that the Courts within this country are legally bound to recognise the Respect of international law, the following considerations are provided in the framework of a friend of the court (Amicus Curiae):

- According to all available information, Mr. Alex Saab was appointed Special Envoy of the Government of the Bolivarian Republic of Venezuela and was responsible for seeking the necessary human resources for the government and people of Venezuela and negotiating with companies in the Islamic Republic of Iran. Consequently, he was to hold official meetings with the Ministers for Oil, Industry and Healthcare in the Islamic Republic of Iran and to discuss the purchase of legal and humanitarian articles, and notably medication, foodstuffs and fuel. Consequently, according to the Government in the Islamic Republic of Iran, he is considered as a civil servant and special envoy of the Bolivarian Republic of Venezuela, who was accepted as special agent by the Government of the Islamic Republic Iran.

Consequently, the Embassy of the Islamic Republic of Iran in Venezuela, on 8th June 2020, and prior to Mr. Saab's visit to Iran, sent an official note to the Venezuelan Minister for Foreign Affairs, in which questions concerning the aforementioned official meetings between 13th and 16th June 2020 in particular were outlined, whereby said individual was responsible for supervision of the immediate supply of food and medication required by Venezuela. The Venezuelan Ministry for Foreign Affairs also approved receipt of a written note from the Embassy of the Islamic Republic of Iran in Venezuela on 8th June 2020.

Diplomatic officials and envoys in a foreign country enjoy civil and criminal immunity, and their immunity has become a universally recognised principle

---

17, Ave des Ambassadeurs – Fann Résidence – BP 735 Dakar
Tel. 33 825 25 28 / 33 824 05 22 Fax: 33 824 23 14 – Email: iranemb.dkr@mfa.gov.ir





*Embassy of the Islamic Republic of Iran*
*Dakar*

under international law down the years. In order to protect diplomatic relation channels by granting exemptions and immunity to diplomatic representatives, countries have recognised the sole and exclusive competence of the country of origin of the envoy concerning charges held against said persons so as to be able to exercise their official duties in total freedom, independence and to prevent governments from relinquishing their duties by arresting or impeding said individuals. The principle of diplomatic immunity has also been recognised and applied throughout the judicial system of this country.

- Pursuant to international legal customs, for a long time, diplomats have been authorised to travel throughout third countries in total security when leaving/returning in the framework of their post. This entitlement is also called the right of safe passage. In particular, by virtue of this entitlement, third countries through whose territory a diplomat travels, must respect these rights, and such respect is justified on the principle of reciprocity. Third countries, in particular, should guarantee the security of the diplomat. Any insult made against a diplomat would constitute an insult against the government for which he or she is an envoy and against the entire nation. Arrest of a diplomat and any violence inflicted thereupon constitute a breach of the rights of a government official.

- The right of safe passage refers to the right of a diplomat to safety leave and/or return to his or her post. However, this right does not necessary refer to a right of absolute immunity against civil or criminal proceedings. However, such proceedings should not interfere with performance of his or her post as official representative. This is why the power to take proceedings was granted exclusively to the country of origin of the envoy.

- Authors of international law appear to agree on two aspects of safe passage in question. Firstly, since the right of safe passage by virtue of international law is a "right" and results from the need to uphold diplomatic responsibility, forming an integral part of any independent State. Secondly, the right of the official representative to not to have to tolerate any harassment during his or her passage should be respected as soon as his/her identity as diplomat is disclosed. However, if necessary, a diplomat should present a passport and all relevant documents so as to benefit from those rights and privileges granted.

- As diplomatic immunity constitutes a customary rule of international law, no national legislation is required to apply this and the courts in the country are legally-bound to recognise this and ensure respect of the legislation of other States by virtue of international law.

- The legal systems of other countries have constantly underlined that as per customary international law, diplomats have a right of safe passage. Examination of international legal treaties, as well as practices applied in countries and international legal rulings, show that countries accept the customary international right of safe passage. Consequently, a third country should authorise a diplomat to pass through a country to leave/return to his or her

17, Ave des Ambassadeurs – Fann Résidence – BP 735 Dakar
Tel. 33 825 25 28 / 33 824 05 22 Fax: 33 824 23 14 – Email: iranemb.dkr@mfa.gov.ir



### *Embassy of the Islamic Republic of Iran*
### *Dakar*

official post without interruption. In other words, the executive and judicial powers of countries agree on the existence of such a right and its enforceable nature, pursuant to international customs.

-    Mr. Alex Saab was arrested on 12th June 2020 at the airport on Sal Island in the Republic of Cape Verde when his plane had landed to refuel en route towards the Islamic Republic of Iran, whilst however benefitting from special diplomatic immunity when travelling through a third country as Special Envoy of Venezuela.

-    He continues to be held in detention, whilst on 15th March 2021 the Court of Justice of the Economic Community of West African States (ECOWAS) ordered his release and the suspension of extradition proceedings. However, on 16th March 2021, in response to the appeal of 14th January 2021 against extradition, and despite the legally-binding nature of the ruling handed down by the Court of Justice of the Economic Community of West African States, the Supreme Court in Cape Verde ruled in favour of extradition.

-    Whilst the Iranian authorities were expecting the arrival of Mr. Alex Saab in Iran for his bilateral cooperation assignment, the infringement of his diplomatic immunity in Cape Verde has disturbed cooperation and international relations between the two countries, which has had unacceptable consequences. This decision by the Government of Cape Verde has legal implications, notably the fundamental principle of respect of sovereign equality by virtue of article 2 (1) of the United Nations Covenant, which leads to legal issues.

The Islamic Republic of Iran has always expressed its concern confronted with the consequences of any infringement of the fundamental principles of international public law and the interference in bilateral relations between countries, and in particular, a breach of diplomatic immunity by countries can lead to devastating effects on the desire of governments to seek peaceful resolutions to international disputes and further consolidate relations by sending and receiving diplomatic envoys, and consequently maintaining global peace.

Unilateral actions by certain countries, including the United States, discrediting recognised rules and principles of international law which guarantee the sovereignty of other countries as well as global peace and security, will most certainly be observed by continuous vigilance by the international community. It is consequently desirable for other counties to rely on well-established international and legal principles to counter efforts by these countries aimed at undermining or impeding peaceful methods of maintaining international peace and security, as precious foundations of international law, and in particular through the completion of national relations, centuries of fighting by politicians and international jurists, and persistent devastating wars.

17, Ave des Ambassadeurs – Fann Résidence – BP 735 Dakar
Tel. 33 825 25 28 / 33 824 05 22 Fax: 33 824 23 14 – Email: iranemb.dkr@mfa.gov.ir

CERTIFIED TRANSLATION
09/08/2021
REG 07635166
LANGUAGE REACH



***Embassy of the Islamic Republic of Iran***
***Dakar***

Given all of the elements in this case and the aforementioned arguments, the Islamic Republic of Iran reiterates its deep concern to the Government of Cape Verde as to the consequences of the breach of fundamental principles of international public law and interference in bilateral relations between Iran and Venezuela.

Consequently, the Islamic Republic of Iran calls upon the Government of Cape Verde to take all necessary measures so as to draw the attention of its official authorities to the inalienable principles of international law in this regard, and given the immunity of Mr. Alex Saab as special envoy on a vital diplomatic mission, by favouring dialogue and other means to immediately resolve this dispute and in a peaceful manner.

The Embassy of the Islamic Republic of Iran in Dakar would like to take this opportunity to reiterate its highest consideration and respect to the Ministry for Foreign Affairs and Communities in the Republic of Cape Verde.

[Signature]



MINISTRY OF FOREIGN AFFAIRS
AND COMMUNITIES
OF THE REPUBLIC OF CAPE VERDE

17, Ave des Ambassadeurs – Fann Résidence – BP 735 Dakar
Tel. 33 825 25 28 / 33 824 05 22 Fax: 33 824 23 14 – Email: iranemb.dkr@mfa.gov.ir


CERTIFIED TRANSLATION
LANGUAGE REACH
09/08/2021
REG 07635166

# DEPARTURE

| [illegible] | [illegible] | RECIPIENT | OBJECT | [illegible] | OBSERVATIONS |
|---|---|---|---|---|---|
| | [Illegible]/21 | [illegible] | Correspondence from [illegible] | [Stamp: 08 AUGUST 2021] | |
| | 06/08/21 | [illegible] | SAAB Case | [Stamp: Embassy of the Republic of Cape Verde in Dakar 06.08.2021 LETTER ARRIVED] | |





## Ambassade de la République Islamique d'Iran
## Dakar

*Au Nom de Dieu Clément et Miséricordieux*

N° 3710/08/AID

Le : 06 Août 2021

L'**Ambassade de la République Islamique d'Iran à Dakar** présente ses compliments à **l'Ambassade de la République du Cabo Verde à Dakar**, et a l'honneur de lui faire parvenir ci-joint la note 3708/08/AID en date du 06 Août 2021, relative à l'affaire de **M. Alex Saab**, Envoyé spécial du Gouvernement bolivarien du Venezuela et considéré comme une figure officielle par le Gouvernement de la République Islamique d'Iran.

Lui demandant de bien vouloir transmettre ladite note au Ministère des Affaires Etrangères et des Communautés, l'Ambassade de la République Islamique d'Iran à Dakar saisit cette occasion pour renouveler à l'Ambassade de la République du Cabo Verde à Dakar, les assurances de sa très haute considération.

AMBASSADE
DE LA REPUBLIQUE DU CABO VERDE
DAKAR

17, Ave des Ambassadeurs - Fann Résidence - BP 735 Dakar
Tel. 33 825 25 28 / 33 824 05 22 Fax: 33 824 23 14 - Email: iranemb.dkr≠mfa.gov.ir



Scanned with CamScanner

# Ambassade de la République Islamique d'Iran Dakar

*Au Nom de Dieu Clément et Miséricordieux*

N° 3708/08/AID

Le : 06 Août 2021

L'Ambassade de la République islamique d'Iran à Dakar, tout en exprimant ses compliments au Ministère des Affaires étrangères et des Communautés de la République du Cabo Verde, et suite aux notes précédentes concernant M. Alex Saab, demande les explications suivantes comme informations fournies par le Gouvernement de la République islamique d'Iran sous forme d'Amicus Curiae ou d'une institution similaire dans le système juridique de ce pays qui doit être présentée aux autorités judiciaires compétentes.

Selon les règles du droit international, le traité sur la sécurité du passage des diplomates à travers les pays tiers, qui est également cristallisé dans des conventions internationales, dont la Convention sur les missions spéciales (1969), et étant donné que les tribunaux de ce pays sont tenus de reconnaître le Respect du droit international, les considérations suivantes sont offertes en tant qu'ami de la cour (Amicus Curiae) :

- Selon les informations disponibles, M. Alex Saab a été nommé Représentant spécial du gouvernement de la République bolivarienne du Venezuela et a été chargé de trouver les ressources humaines nécessaires pour le gouvernement et le peuple du Venezuela et de négocier avec les entreprises de la République islamique d'Iran. En conséquence, il devait tenir des réunions officielles avec les ministres du pétrole, de l'industrie et de la santé de la République islamique d'Iran et discuter de l'achat d'articles licites et humanitaires, notamment des médicaments, de la nourriture et du carburant. Ainsi, selon le Gouvernement de la République islamique d'Iran, il est considéré comme un fonctionnaire et envoyé de la République bolivarienne du Venezuela, qui a été accepté comme agent spécial par le Gouvernement de la République islamique d'Iran.

À cet égard, l'ambassade de la République islamique d'Iran au Venezuela, le 8 juin 2020, avant la visite de M. Saab en Iran, a envoyé une note officielle au ministère vénézuélien des Affaires étrangères, au cours de laquelle les questions liées aux réunions de travail susmentionnées entre le 13 et le 16 juin 2020 en particulier, il a assuré le suivi de l'approvisionnement immédiat en nourriture et en médicaments dont le Venezuela a besoin. Le ministère vénézuélien des Affaires étrangères a également approuvé la réception d'une note écrite de l'ambassade de la République islamique d'Iran au Venezuela le 8 juin 2020.

Les agents et envoyés diplomatiques dans un pays étranger jouissent de l'immunité civile et pénale, et l'immunité de ces personnes est devenue un principe

17, Ave des Ambassadeurs – Fann Résidence – BP 735 Dakar
Tel. 33 825 25 28 / 33 824 05 22 Fax: 33 824 23 14 – Email: iranemb.dkr@mfa.gov.ir

CERTIFIED TRANSLATION LANGUAGE REACH
09/08/2021
REG.076351.66
Scanned with CamScanner



## Ambassade de la République Islamique d'Iran
## Dakar

universellement reconnu en droit international au fil des siècles. Afin de protéger les voies des relations diplomatiques en accordant des exemptions et immunités aux représentants diplomatiques, les pays ont reconnu la compétence exclusive du pays d'envoi en ce qui concerne les charges retenues contre ces personnes afin qu'elles puissent exercer leurs fonctions officielles en toute liberté, indépendance et d'empêcher les gouvernements de s'acquitter de leurs devoirs en les arrêtant ou en les empêchant de le faire. Le principe de l'immunité diplomatique a également été reconnu et appliqué dans le système juridique de ce pays.

- Selon le droit international coutumier, les diplomates ont depuis longtemps le droit de traverser en toute sécurité les pays tiers en partant/revenant de leur poste. Ce droit est parfois appelé droit de passage sûr. En particulier, en vertu de ce droit, les pays tiers sur le territoire desquels passe un diplomate doivent respecter ses droits, et ce respect est justifié sur la base du principe de réciprocité. Les pays tiers, en particulier, doivent assurer la pleine sécurité du diplomate. Insulter un diplomate sera une insulte au gouvernement qui l'a envoyé et à toute la nation de ce pays. L'arrestation d'un diplomate et les violences à son encontre constituent une violation des droits d'un fonctionnaire affilié à un gouvernement.

- Le droit de passage sûr désigne le droit du diplomate de passer en toute sécurité au départ/au retour de son poste. Cependant, ce droit ne signifie pas nécessairement le droit à une immunité totale contre les poursuites civiles ou pénales. Cependant, cette poursuite ne doit pas interférer avec l'exercice des fonctions de l'officier. C'est pourquoi le pouvoir de s'en occuper a été accordé exclusivement au pays d'envoi.

- Les auteurs du droit international semblent s'accorder sur deux aspects du passage sûr en question. Premièrement, puisque le droit de passage sûr en droit international est un « droit » et découle de la nécessité d'accomplir des missions diplomatiques, qui fait partie intégrante de tout État indépendant. Deuxièmement, le droit de l'agent de ne tolérer aucun harcèlement pendant la traversée doit être respecté dès que l'identité de son diplomate est révélée. Cependant, si nécessaire, le diplomate doit présenter le passeport et les documents pertinents afin de bénéficier des privilèges qui lui sont accordés.

- L'immunité diplomatique étant une règle coutumière du droit international, aucune loi nationale n'est requise pour l'appliquer et les tribunaux de ce pays sont tenus de reconnaître et de faire respecter les droits des autres États en vertu du droit international.

- Les systèmes juridiques des différents pays ont constamment souligné que selon le droit international coutumier, un diplomate a un passage sûr. L'examen des traités de droit international, ainsi que la pratique des pays et des décisions judiciaires internationales, montre que les pays reconnaissent le droit international coutumier sur le droit de passage sûr. Par conséquent, un pays tiers devrait autoriser un diplomate à traverser ce pays pour aller/retourner de sa

17, Ave des Ambassadeurs – Fann Résidence - BP 735 Dakar
Tel. 33 825 25 28 / 33 824 05 22 Fax: 33 824 23 14 – Email: iranemb.dkr@mfa.gov.ir



09/08/2021
REG.076351.66

Scanned with CamScanner



## *Ambassade de la République Islamique d'Iran Dakar*

mission sans interruption. En d'autres termes, les pouvoirs exécutif et judiciaire des pays conviennent de l'existence d'un tel droit et de sa force exécutoire, conformément à la coutume internationale.

- M. Alex Saab a été arrêté le 12 juin 2020 à l'aéroport de l'île de Sal dans la République du Cabo Verde  lorsque son avion avait atterri pour recevoir du carburant en route vers la République islamique d'Iran, tout en bénéficiant d'une immunité diplomatique spéciale dans un pays tiers comme Envoyé spécial du Venezuela.

- Sa détention s'est poursuivie alors que le 15 mars 2021, la Cour de justice de la Communauté économique de l'Afrique de l'Ouest a ordonné sa libération et la suspension de toute procédure d'extradition. Cependant, le 16 mars 2021, en réponse au recours du 14 janvier 2021 contre l'extradition, malgré le fait que l'arrêt de la Cour de justice de la Communauté économique des États de l'Afrique de l'Ouest était contraignant, la Cour suprême du Cabo Verde  a statué en faveur de l'extradition.

- Alors que les autorités iraniennes attendaient l'arrivée de M. Alex Saab en Iran pour la réalisation de la coopération bilatérale, la violation de son immunité diplomatique au Cap Vert a perturbé la coopération et les relations internationales entre les deux pays, ce qui a laissé des effets inacceptables. Cette décision du gouvernement du Cabo Verde a des implications juridiques, notamment le principe fondamental du respect de l'égalité de souveraineté en vertu de l'article 2 (1) de la Charte des Nations Unies, qui pose des problèmes juridiques.

La République islamique d'Iran a toujours exprimé sa préoccupation face aux conséquences de la violation des principes fondamentaux du droit international public et de l'ingérence dans les relations bilatérales des pays, en particulier, la violation des immunités diplomatiques des pays peut avoir des effets dévastateurs sur la volonté des gouvernements de résoudre pacifiquement les différends internationaux et d'approfondir les relations par l'envoi et la réception d'agents diplomatiques, et donc le processus de maintien de la paix mondiale.

Les actions unilatérales de certains pays, dont les États-Unis, en discréditant les règles et principes reconnus du droit international qui garantissent la souveraineté d'autres pays et la paix et la sécurité mondiales, seront certainement observées par la conscience vigilante de la communauté internationale. Par conséquent, il est souhaitable que d'autres pays s'appuient sur des principes et principes juridiques internationaux bien connus pour contrecarrer les efforts de ces pays visant à saper ou à nier les moyens pacifiques de maintenir la paix et la sécurité internationales, car les réalisations précieuses du droit international, en particulier les relations nationales , des siècles de lutte par des politiciens et juristes internationaux et des guerres dévastatrices persistantes ont été accomplis.

17, Ave des Ambassadeurs – Fann Résidence - BP 735 Dakar
Tel 33 895 95 98 / 33 894 05 22 Fax: 33 824 23 14 – Email: iranemb.dkr@mfa.gov.ir



Scanned with CamScanner



## *Ambassade de la République Islamique d'Iran*
## *Dakar*

Compte tenu de tous les éléments de l'affaire et des arguments susmentionnés, la République islamique d'Iran réitère sa profonde préoccupation au gouvernement du Cabo Verde quant aux conséquences de la violation des principes fondamentaux du droit international public et de l'ingérence dans les relations bilatérales entre l'Iran et le Venezuela.

En conséquence, la République islamique d'Iran appelle le gouvernement du Cabo Verde à prendre toutes les mesures nécessaires pour attirer l'attention de ses autorités officielles sur les principes inaliénables du droit international à cet égard, et compte tenu de l'immunité de M. Alex Saab en tant qu'envoyé spécial en une mission diplomatique vitale, en utilisant le dialogue et d'autres outils pour résoudre ce différend immédiatement et de manière pacifique.

L'Ambassade de la République Islamique d'Iran à Dakar, saisit cette occasion pour renouveler au Ministère des Affaires Etrangères et des Communautés de la République du Cabo Verde, les assurances de sa très haute considération.

MINISTERE DES AFFAIRES ETRANGERES
ET DES COMMUNAUTES
DE LA REPUBLIQUE DU CABO VERDE



17, Ave des Ambassadeurs – Fann Résidence - BP 735 Dakar
Tel. 33 825 25 28 / 33 824 05 22 Fax: 33 824 23 14 – Email: iranemb.dkr@mfa.gov.ir

09/08/2021
REG.07635166

Scanned with CamScanner



Scanned with CamScanner



09th August 2021

Dear Sirs,

**Re: French into English Certified Translation**

Language Reach Limited is a UK-registered professional translation and interpreting company and a fully qualified registered member of The Association of Translation Companies (Member No. 2018ATCR1238). We hereby confirm that we have translated the enclosed document(s) from French into English.

As a responsible translation agency we only employ certified linguists to work with us. We are satisfied with the linguistic accuracy and hereby confirm that the English written translation of the French document(s) represents its fair and accurate linguistic message as intended in the original file(s).

We hereby confirm that this is a true and correct translation and certify the linguistic accuracy.

For more information, please contact Language Reach Limited on +44 (0) 208 677 3775.

Yours sincerely,



**Aniello Attianese**
Senior Account Manager



