IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALEX NAIN SAAB MORAN, *et al.*,<br><br>Defendants. | Case No. 19-20450-CR-Scola |

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF LIMITED MOTION TO RECONSIDER ORDER ON MOTION TO COMPEL DISCOVERY**

  Defendant Alex Nain Saab Moran's ("Mr. Saab") Motion for Reconsideration, ECF No. 146 (the "Motion"), raises a narrow and discrete *Brady/Giglio* concern with respect to documents from a single agency, the U.S. Department of State ("State"). The Motion was made only after Mr. Saab made specific, cabined requests for State materials and even negotiated with the government regarding the specific search terms to be utilized. Indeed, the government has already made a limited production of State materials, demonstrating its ability to obtain material from State. Of equal importance, the government's own filings have introduced State as a witness, opening the door to what State knew, and when, thus justifying turnover of impeachment evidence.

  Yet now, inexplicably, the government refuses to provide a concrete set of State materials that are clearly relevant to Mr. Saab's affirmative defense of diplomatic immunity, claiming that Mr. Saab is engaging in a "fishing expedition." *See* ECF Nos. 135, 151. But as the government surely knows, a "fishing expedition" is "[a]n attempt, through ***broad discovery*** requests or ***random questions***, to elicit information from another party in the ***hope*** that something relevant might be found; esp. such an attempt that exceeds the scope of discovery allowed by procedural rules." *Fishing Expedition*, BLACK'S LAW DICTIONARY (9th ed. 2009) (emphasis added). Here, by contrast, Mr. Saab seeks specific, *targeted* materials which the government's own prior disclosure show *actually exist* (or once did) and *directly relate* to State's awareness of Mr. Saab's diplomatic status.

  Under the Due Process Clause of the Fifth Amendment, the government cannot now close its eyes and cover its ears, pretending that it does not know about this highly relevant, exculpatory material relating to diplomatic immunity. Indeed, the government has interjected State (and its

knowledge of Mr. Saab's diplomatic status) as a witness in this case by submitting a declaration by State, claiming that it has no awareness of any basis for such immunity. ECF No. 24 at 17. The materials produced by the government to date show otherwise. Accordingly, as elaborated below, the government's prior commitments, *Giglio*, and the new evidence presented in the Motion require more from the government. Reconsideration should be granted.

## ARGUMENT

A.   *The Government's Prior Commitment Requires More*

The government's Opposition Brief, ECF No. 151 ("Opp'n" or "Opposition") suggests that it is a mere passive conduit that "requested and received certain materials" from State relating to Mr. Saab's diplomatic status. Opp'n at 3. Following its receipt of these "certain materials" from State, the government reviewed them and gave "State an opportunity to review . . . for any claims of privilege." *Id*. Following a privilege review, the government then produced to Mr. Saab about three dozen documents, most of which were heavily or fully redacted. The government reaffirms this description multiple other times, confirming that it simply worked with whatever was provided. *See, e.g.,* Opp'n at 4 ("[The government] has provided all responsive documents it has received from OIA and [State]."); *id.* at 9 ("The government has also produced material it received from OIA and [State]."); *id.* at 10 ("[T]he government again reiterates it has provided all responsive document [*sic*] it received from [State] and it is not in possession of any additional documents."); *id.* at 11.

Notably, the scope of the government's request for materials from State is unclear. *Id.* at 9. It is likewise unclear how State selected the "certain materials" that it provided to the government. *Id.* at 3. It is thus unknown whether the government made any attempts to ensure the adequacy or sufficiency of State's disclosure. This, notwithstanding that *Brady* and Rule 16 impose obligations on the *prosecutors*, whose job it is to ensure a fair trial. Further, it is also unknown how and why State held back other materials that clearly exist, thus keeping them out of the literal "possession" of the government.

The opacity of the process for seeking these highly relevant, exculpatory State materials is fundamentally unfair. Yet, the government states that it is "well aware" of its obligations under *Brady* and *Giglio* and "has and will continue to satisfy its discovery obligations." Opp'n at 2, 4. This boilerplate incantation, however, does not substitute for actual compliance with constitutional

2

commands. The Court's oversight is essential to mitigate the substantial risks inherent in allowing the government to be its own referee.

Indeed, the government explicitly claims credit for going "above and beyond," Opp'n at 11, and asserts that it is trying "to be helpful" and "alleviate any concerns." *See* ECF No. 123 at 4.[1] But it has no answer for the actual issue raised by Mr. Saab: Why has the government *not* produced State documents that are self-evidently missing? Mr. Saab's Motion detailed, for example, that State has not produced the same items identified by OIA (*i.e.*, communications between OIA and State). It also noted that there are obviously other *necessary* communications regarding the same topics that must be missing. Moreover, the Motion addressed specific diplomatic materials related to the *notes verbal* discussing Mr. Saab's diplomatic status that were sent to State. The government has no answer for why certain *Brady* and Rule 16 materials are in DOJ's files but not those of State.

The government's response to all of this is buried in a footnote towards the end of its brief, which reiterates that it "has provided all responsive documents it received from the State Department and is not in possession of any additional documents." *See* Opp'n at 10 n.4. Of course, arguments in footnotes are disfavored and "not ordinarily consider[ed]." *See Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1209 n.5 (11th Cir. 2019); *see also Plain Bay Sales, LLC v. Gallaher*, No. 18-80581-CIV, 2019 WL 1782761, at *6 (S.D. Fla. Apr. 24, 2019) (collecting cases). In any event, the government's "response" to Mr. Saab's argument is burying its head in the sand, pretending that it does not have *full awareness* of the inadequacy of State's disclosure, and proclaiming that it cannot control State's inadequacies.

The government's role in State's disclosure, however, is more controlling than it admits. The government asked State to search for materials responsive to Mr. Saab's narrowly tailored requests relating to his diplomatic status, presumably providing State with the search terms negotiated with defense counsel. State purported to comply, yet failed to produce materials that were clearly responsive to Mr. Saab's—and the government's own—request. It is inconceivable that an *adequate* search at State would not hit on the same documents provided by OIA, nor *a*

---

[1] Yet it fails to even address, let alone attempt to defend, that it simply blew through the Court's prior order that it "make its best efforts" to obtain and produce "unclassified *Brady* or *Giglio* material in the possession, custody, or control of [OIA] and/or [State] no later than August 15, 2022." ECF No. 116.

*single* email from the State Department Special Representative for Iran, the State Department Deputy Special Representative for Iran, or the State Department Press Officer, each of whom are part of emails disclosed by OIA discussing Mr. Saab's diplomatic status. These facts alone strongly suggest that State did not adequately comply with the government's request (including searching the relevant custodians). This is not mere supposition or hope that such documents exist.

The government's argument is that when another government agency/department *agrees to comply* with the government's request for exculpatory or impeachment material requested by a criminal defendant, the "prosecution team" (however defined) can entertain the legal fiction that such material *does not exist* when the other government/agency obviously fails to comply fully with the government's own request. As stated in *Kyles v. Whitley*, 514 U.S. 419, 437 (1995), a "prosecutor has a duty to learn of any favorable evidence known to others *acting on the government's behalf* in the case. . . ." The relevant material within State is not possessed by some random third party over which the government has no knowledge or control, as evidenced by State's initial turnover. The government "has the means to discharge the government's *Brady* responsibility if [it] will" and cannot "substitute the [State Department] for the prosecutor, and even the courts themselves, as the final arbiters of the government's obligation to ensure fair trials" under the Due Process Clause. *Id.* at 438.

Indeed, "[i]t is not difficult to envision circumstances where the prosecution possesses, either actually or constructively, *Brady* information that for some reason is not in the 'file,' such as material in a police officer's file (but not in the prosecutor's file) or material learned orally and not memorialized in writing." *Smith v. Sec'y of New Mexico Dep't of Corr.*, 50 F.3d 801, 828 (10th Cir. 1995). The *Smith* Court was addressing the concept of an "'open file' policy" and further observed that "[n]o one could reasonably argue that . . . the prosecution's *Brady* obligations would be satisfied by its 'open file' policy" because "it fails to recognize that *Brady* material may be found in places other than a prosecutor's file. The prosecution's affirmative obligation under *Brady* may often go beyond divulging what is in 'the file.'" *Id.*

The facts strongly suggest a *selective disclosure* by State, of which the government is well aware. Yet the government attempts to disavow any responsibility for the actions of State. But because the government has agreed to "voluntarily search the files of some other agencies" for exculpatory/impeachment material, it is "held to the same standard that applies to information found in its own files." *See* Mot. at 10 (quoting *United States v. Alshahhi*, 21-cr-371, 2022 WL

2239624 (E.D.N.Y. June 22, 2022)). The government attempts to distinguish *Alshahhi*, mostly by asserting that the District Court cited no cases. *See* Opp'n at 5. But that is unavailing, because Mr. Saab and the government agree on the key point: *Alshahhi* "held the government's discovery obligations are limited to the prosecution team but that to the extent the government volunteers to search the files of some other agency, it would be held to the same standard "that applies to information found in its own files." Opp'n at 10. That is all that the Motion asks with respect to State.[2]

Absent a Court order, it is evident that the State search will not be conducted properly and *Brady* and Rule 16 materials directly bearing on the defendant's diplomatic immunity defense will be withheld. Accordingly, the Motion should be granted.

B.    *Giglio and the Due Process Clause Require More*

The government acknowledges, as it must, that the "obligation to disclose favorable evidence covers . . . information that can be used to impeach government witnesses." Opp'n at 4 (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)). Yet the Opposition glosses over Mr. Saab's key *Giglio* argument that the government essentially has used a State official as a witness in this case, thereby obliging it to turnover related impeachment material. *See* Mot. at 7-10. The government previously acknowledged this issue, admitting that "because of . . . that declaration we submitted, we thought it was prudent that we go beyond the prosecution team for that instance. . . ." Transcript, ECF No. 122 at 14:16-19. And although this argument was raised in the motion to compel, *see* ECF No. 123 at 15-16, the Court did not address it in its Order, thus warranting reconsideration.

Tellingly, the government's Opposition never once confronts the declaration it submitted from State, which has rendered State a key witness. As described previously, that declaration states in relevant part that Mr. Saab was not notified to the Department of State (an utterly irrelevant fact) and "[a]s such, the Office of Foreign Missions is **not aware of a basis** for [Mr. Saab] to enjoy immunity from the criminal or civil jurisdiction of the United States." *See* ECF No. 24-3 (emphasis

---

[2] Likewise, the government's reliance on *United States v. Loera*, No. 09 Cr. 466, 2017 WL 2821546, *7 (E.D.N.Y. June 29, 2017) is unavailing. First, the *Alshahhi* Court contemplated *Loera* and still held as it did with respect to "voluntary searches." *See* 2022 WL 2239624 at *26. Second, *Loera* had nothing to do with voluntary searches undertaken by the government—obviously not the case here where the government has previously determined it "prudent that we go beyond the prosecution team" to State. Transcript, ECF No. 122 at 14:14-19.

added). The government has affirmatively relied upon, and continues to rely upon, this declaration, rendering State a key witness for the government. Indeed, the government has invited the Court to give this declaration significant weight. *See, e.g.,* ECF No. 24 at 17-18.

Also tellingly, this declaration from State has been a moving target. The government argued before the Eleventh Circuit that "although the evidence in the record supplied by the Government that bears on Saab's claim of diplomatic immunity ***is limited, it is determinative***." *See* Gov't Br., No. 21-11083 at 37 (Oct. 14, 2021) (emphasis added). It asserted that the State declaration, which was prepared and provided by State, "forecloses Saab's diplomatic immunity claim." *Id.* at 38. The Eleventh Circuit, of course, declined the government's invitation to make such a broad and baseless holding and remanded for development of the record on Mr. Saab's diplomatic status. Following remand, the government backed away from such sweeping claims that this single document is a magic eraser, capable of "foreclos[ing]" a diplomatic immunity claim. Indeed, as noted, the declaration is barely mentioned by the government in the discovery briefing. This begs the question of why the government is now backing away from its reliance on the State declaration.

The simplest answer is that the government knows there is impeachment material held by State—that it was, in fact, aware of a basis for Mr. Saab's immunity—and it is trying to avoid disclosing that material by walking back its prior foundational reliance on the State declaration. The limited materials disclosed by the government thus far have revealed significant cracks in the foundation, and it now desperately seeks to avoid discovery and disclosure of items that could cause wholesale collapse. This is inconsistent with the government's obligations and *Giglio*. It is "not compatible with the rudimentary demands of justice" to allow flawed or false evidence "***to go uncorrected****. . .* " once the flaw or falsity is revealed. *United States v. Antone*, 603 F.2d 566, 569 (5th Cir. 1979) (internal citations and quotation marks omitted). *See also* Mod. R. Prof. Conduct 3.3 (Candor Toward the Tribunal); 4.1 (rule requiring truthfulness includes preventing misrepresentations that occur "by partially true but misleading statements or omissions that are the equivalent of affirmative false statements"). Simple fairness (and thus due process) demands turnover of all State materials that could impeach the representations made in the State declaration, which have been relied upon by the government here. *Giglio*, 405 U.S. at 154.

C.  *New Evidence Requires More Than What Has Been Provided*

The Court made its prior determination with regard to State without the benefit of important new documents, additionally warranting reconsideration. Much of the Opposition is focused on haggling over the specific import of documents included with the Motion, in an apparent attempt to distract the Court from one simple and uncontested fact: the Court did not have the benefit of these documents previously, in no small part because they were not produced by August 15, 2022. *Cf.* ECF No.116 ("The Government must make its best efforts to obtain and produce to the Defendant any unclassified *Brady* or *Giglio* material in the possession, custody, or control of . . . the Department of State no later than August 15, 2022."). In any event, it is clear that State continues to play a significant role in the continuation of this prosecution including as a witness (*supra*, § B).

The government's argument that none of the new documents "include any correspondence between the prosecution team . . . or show the Department of States involved in any way with the investigation or prosecution of SAAB MORAN for the crimes charged in the indictment" misses the mark. *See* Opp'n at 7. First, the question posed in the Motion is framed in the context of the diplomatic immunity defense which the Court observed is "exactly what he seeks out to prove by way of his discovery requests." Order, ECF No. 138 at 4. If State materials support that defense, they are exculpatory. Second, the timing of the various documents vis-à-vis the timing of the indictment is a false equivalency, as Mr. Saab's status as Special Envoy, and thus his entitlement to immunity, is ongoing at all times from April 9, 2018, forward. *See* Opp'n at 8-9.

Finally, the government's attempts to minimize the crucial impact of the new evidence by verbal and logical contortions (*e.g.*, referring to it as simply commenting on blog posts or routine contacts with the press) is comical. *Id.* The new evidence unequivocally shows that State was part of the decision-making process for prosecutors by opining on whether to proceed with this prosecution in the face of an anticipated claim of diplomatic immunity. Even more revealing, the new evidence suggests that the former Secretary of State was not only aware that diplomatic immunity would be claimed (and thus posed a threat to successful prosecution), but he also explicitly proposed an argument to *counter* the anticipated claim of diplomatic immunity—an argument that is *identical* to the legal argument now employed by the government (*i.e.*, the Maduro non-recognition argument). *See* Mot. at 8. The Opposition is deafeningly silent on the former Secretary's role in what is now transpiring before this Court, and the concomitant need for the

defense to access *Giglio* impeachment evidence in the possession of the government's witness, State.

The *Antone* Court emphasized a "case-by-case analysis" and "Courts have considered various factors" in analyzing joint prosecutorial effort. *United States v. Slawson*, No. 14-cr-186, 2014 WL 5804191, at *16 (M.D. Ga. Nov. 7, 2014). The new evidence revealed since this Court's original order, ECF No. 138, evinces apparent involvement by the former Secretary of State and several other high-ranking State officials in Mr. Saab's prosecution. This new evidence should thus be a factor deserving significant weight in the present Motion for reconsideration. *See* Mot. at 7-9.

Date: November 2, 2022                                          Respectfully submitted,

                                                                         BAKER & HOSTETLER LLP

/s/ *Lindy K. Keown*
Lindy K. Keown (FL: 117888)
200 South Orange Avenue
Suite 2300
Orlando, Florida 32801
Tel: (407) 649-4000
lkeown@bakerlaw.com

/s/ *David B. Rivkin, Jr.*
David B. Rivkin, Jr. (*pro hac vice*)
Elizabeth Price Foley (FL: 92380)
Jonathan R. Barr (*pro hac vice*)
Lee A. Casey (*pro hac vice*)
Richard Raile (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Suite 1100
Washington, DC 20036
Tel: (202) 861-1500
drivkin@bakerlaw.com
efoley@bakerlaw.com
jbarr@bakerlaw.com
lcasey@bakerlaw.com
rraile@bakerlaw.com

Jonathan B. New (*pro hac vice*)
45 Rockefeller Plaza
11th Floor
New York, New York 10111
Tel: (212) 589-4200
jnew@bakerlaw.com

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on November 2, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/  Lindy K. Keown*
Lindy K. Keown
