```
 1                      UNITED STATES DISTRICT COURT
                        SOUTHERN DISTRICT OF FLORIDA
 2                            MIAMI DIVISION
                         CASE NO: 1:19-CR-20450
 3

 4
      UNITED STATES OF AMERICA,            Miami, Florida
 5
           Plaintiff,                      January 11, 2022
 6
                vs.                        9:00 a.m. - 10:16 a.m.
 7
      ALEX NAIN SAAB MORAN,
 8
           Defendant.                      Pages 1 to 18
 9    _____

10
             DEFENDANT'S MOTION TO MODIFY PROTECTIVE ORDER
11                        BEFORE THE HONORABLE
             UNITED STATES DISTRICT JUDGE ROBERT N. SCOLA
12


13
      APPEARANCES:
14

15    FOR THE PLAINTIFF:       ALEXANDER J. KRAMER, ESQ.
                               U.S. Department of Justice
16                             Criminal Division
                               Bond Building
17                             1400 New York Avenue, N.W.
                               8th Floor
18                             Washington, DC  20005
                               Alexander.kramer@usdoj.gov
19


20
                               KURT LUNKENHEIMER, ESQ.
21                             US Attorney's Office
                               99 NE 4th Street
22                             Miami, FL  33132
                               Kurt.lunkenheimer@usdoj.gov
23

24

25
```

```
 1
      FOR THE DEFENDANT:        JONATHAN B. NEW, ESQ.
 2                              45 Rockefeller Plaza
                                New York, NY 10111
 3                              Jnew@bakerlaw.com

 4
                                JOSEPH MICHAEL SCHUSTER, ESQ.
 5                              Joseph M. Schuster, Esq., P.A.
                                5750 Collins Avenue
 6                              Suite 12G
                                Miami Beach, FL  33140
 7                              Joe@josephmschuster.com

 8
                                NEIL M. SCHUSTER, ESQ.
 9                              555 NE 15th Street
                                Suite 2-C
10                              Miami, FL  33132
                                Neil@neilmschuster.com
11

12

13
      STENOGRAPHICALLY REPORTED BY:
14

15                              SHARON VELAZCO, RPR, FPR
                                Official Court Reporter
16                              United States District Court
                                400 North Miami Avenue
17                              Miami, Florida 33128

18

19
                                    —     —     —
20

21

22

23

24

25
```

1                    (The following proceedings were had:)

2          THE COURT:  Okay.  I know it is not quite 9 o'clock.

3     We have a bunch of people here.

4          Let me start with the government.

5          Are you expecting any other people?

6          MR. LUNKENHEIMER:  No, your Honor.  You have myself,

7     Mr. Kurt Lunkenheimer, assistant U.S. attorney, and DOJ trial

8     attorney Alex Kramer.  So, we are ready to proceed.

9          THE COURT:  All right.

10          And, Mr. New, are you waiting for anybody else?

11          MR. NEW:  Good morning, your Honor.

12          Your Honor, I see that Mr. Joe Schuster and Mr. Neil

13     Schuster are also both on with me today.  Mr. Rivkin perhaps

14     may join, but I think we can go forward, at this time.

15          THE COURT:  Well, if Mr. Rivkin wants to appear, I will

16     wait a couple of minutes then.

17          It is 9:59.  We will wait until nine.

18          We missed you at the arguments, Mr. New.

19          MR. NEW:  I know.  I wish I could have been there,

20     Judge.  I heard it was a very interesting session.

21          Happy New Year, your Honor.

22          THE COURT:  It is going to be.

23          Do you have a way, Mr. New, of calling Mr. Rivkin to

24     see if he is going to appear?

25          If he is, I will wait a minute or two.

1          MR. NEW:  I can reach out to him, your Honor.  But, I

2     think it is probably safe to just go ahead.  I wouldn't want to

3     delay things, Judge.

4          THE COURT:  All right.

5          So, we are here on the matter of the United States of

6     America versus Alex Saab Moran, the defendant's motion to

7     modify the protective order.

8          Let me hear from the defense as to what you want and

9     why you are entitled to it.

10          MR. NEW:  Yes.  Good morning, your Honor.  Thank you

11     very much.

12          We have a very limited request for modification here.

13     In particular, that there are two email strings that were

14     produced to us in response to Brady requests that involved the

15     prosecution team.  And, what we are asking is permission to

16     potentially use those two email strings in connection with

17     other legal proceedings in other jurisdictions that either are

18     currently ongoing or may be in the future.

19          And, with regard to -- if I could -- may just address

20     the protective order itself, your Honor --

21          THE COURT:  Before we get there, tell me, specifically,

22     you say two email strings.  Who are the emails to and from?

23          MR. NEW:  Yes, your Honor.  So, the emails involve

24     various people; but, primarily, the former lead prosecutor from

25     the Southern District of Florida on the case, the various DEA

1   agents and personnel, as well as members of the office of

2   Interpol, Washington -- also known, I think, as NCB within DOJ.

3   And, they concern requests that have been made either from

4   Interpol or to be sent to Interpol, and also requests from Cape

5   Verde.

6           They all relate to the circumstances surrounding Mr.

7   Saab's arrest and detention in Cape Verde; and, in particular,

8   the back and forth concerning the issuance of a diffusion

9   notice, or red notice in order to facilitate and effectuate his

10  arrest.

11          As your Honor, I am sure, is aware, Mr. Saab believes

12  that his arrest and detention in Cape Verde were unlawful, and

13  he has various objections to that that may come into play in

14  these other jurisdictions where there are either ongoing

15  investigations or anticipated investigations; some of which, I

16  am a little careful to, in terms of what I can say, your Honor,

17  because some of them are not public or may not become public.

18  And, also, there are questions of legal strategy here as

19  Mr. Saab considers his legal options.

20          But, with regard to these two emails in particular, as

21  I said, they were produced because the government had a Brady

22  obligation to produce them, your Honor.  And, the protective

23  order, when it was issued, was based on an unopposed motion by

24  the government in which the basis for the protective order that

25  they sought was that they might be producing documents and

1   reports related to additional targets of ongoing law

2   enforcement investigations, the codefendant, other indicted

3   individuals, cooperating witnesses, and PII, which would be

4   sensitive information.

5          And, none of the information in these emails, none of

6   the documents that we are asking for here is -- these two

7   specific emails -- fall into that category.  So, they are not

8   being withheld or limited by the protective order for the

9   purpose of protecting witnesses or confidential informants or

10  ongoing investigations.  These are the documents that the

11  government, as I said, was obligated to produce in terms of

12  Brady.

13         And so, as the Court analyzes and balances the

14  interests here, I think it is worth noting that, as I said,

15  this was a blanket protective order.

16         And, other courts in particular, I can point the Court

17  to U.S. V. Bulger out of the District of Massachusetts, 283

18  F.R.D. 46, where the court recognized that "blanket protective

19  orders are more likely subject to modification than protective

20  orders based on a document-by-document review with a

21  concomitant showing of good cause as to each document, and that

22  parties operate under a blanket -- operating under a blanket

23  protective order, such as the government, cannot rely on an

24  unreasonable expectation that such an order will never be

25  altered."

1          And, in fact, I would argue here, your Honor, as other

2     courts have noted, that this was -- since this was a document

3     that the government was obligated to produce under its Brady

4     obligations, in any event, there was no reliance on this

5     protective order for producing this document.

6          THE COURT:  And, part of the government's response is

7     that these emails were not used during the evidentiary hearing

8     or in support of your motion to dismiss.  But, were they

9     discussed in the pleadings leading up to the evidentiary

10    hearing?

11         MR. NEW:  It is a good question, your Honor.  I

12    believe -- I have to double-check -- I believe there is a

13    footnote in one of the pleadings related to some of the

14    Interpol issues.  I don't believe these particular emails were

15    identified there.

16         That being said, if these had been publicly filed, your

17    Honor, we wouldn't be here asking for permission.

18         I think the government, your Honor, recognizes that if

19    these had been offered as evidence at the hearing, then they

20    could have -- we could use them publicly for whatever purpose.

21         We are trying to do the right thing here, your Honor.

22    We didn't offer them as exhibits just to offer them as exhibits

23    and use them later.  We are coming before your Honor seeking

24    permission to do so.

25         THE COURT:  Okay.  All right.

1          Who is going to present the argument on behalf of the

2    government?

3          MR. LUNKENHEIMER:  Mr. -- AUSA Kurt Lunkenheimer, your

4    Honor.

5          Good morning again, your Honor.  I think one of the --

6    addressing the public aspect, yes, if they had been used at the

7    hearing, right, they would have been filed on the record and

8    then Mr. New and Mr. Saab could use them as they may be.  But,

9    they were not used at the hearing.  They were not attached to

10   any pleadings.  So, we believe they are still subject to

11   protective order.

12         I think the issue is, your Honor, we don't think the

13   good cause standard has necessarily been met.  This criminal

14   case is ongoing; let alone, I think, paused for who knows, nine

15   to 12 months -- or maybe longer, with -- as the diplomatic

16   immunity issue is appealed.  But, it is still ongoing.

17         THE COURT:  Let me ask you a question.  In a regular

18   criminal case, federal case where you produced discovery to the

19   defense, which includes responses under your Brady obligation,

20   is there any restriction on how those materials can be used by

21   the defense?

22         MR. LUNKENHEIMER:  Only if there's a protective order,

23   your Honor.

24         THE COURT:  So, if the protective order comes in, it is

25   okay.  In this particular case, there are certain items that

1    were going to be produced that we believe contain sensitive

2    information, whether it is personal identifying information, or

3    some other -- so, are these emails "sensitive information"?

4             MR. LUNKENHEIMER:  No, your Honor.  They would not fall

5    under the definition of sensitive information.

6             We believe, obviously, as they involve U.S. -- you

7    know, I guess, coordination for an arrest and capture and

8    extradition, they are of a significant sensitive matter.  But,

9    I don't believe they fall into the definition of sensitive

10   information in a protective order.

11            If you recall -- and I can't recall the docket

12   number -- but a long time ago in this case, the protective

13   order was modified.  But, it was modified to allow the use of

14   discovery to assist in the defense of the actual criminal case.

15   Or, you know, I don't think they went into this too far.  But,

16   it was presented by Mr. Neil Schuster that they would want to

17   use these documents in some way, or whatever, to take them -- I

18   forget -- I believe it was to show someone new to help in the

19   defense, or take them out of the country to do the same thing.

20   And, we -- we agreed with that.  And, the Court modified that

21   order.

22            This is for some unknown litigation.  It is not even

23   sure, the way it is written, if it is Mr. Saab's litigation,

24   solely.  I believe his wife is in on the zoom.  And, I believe

25   there is reference to maybe family members and other litigants

1    using it.

2           So, your Honor, I don't think that -- because it is not

3    being used in preparation -- or at least, we have not heard

4    yet -- preparation of his defense in this criminal case, we

5    don't think the good cause standard has been met.  It is being

6    used for some third-party litigation.  I don't know if it is in

7    Italy.  I don't know if it is Cape Verde.

8           It is hard to, you know, really argue against good

9    cause when we don't know enough information.

10          And, I understand Mr. New's points about not wanting to

11   disclose it.  But, they have to meet the good cause standard to

12   modify the protective order based on the case law they even

13   cited.

14          THE COURT:  So, let's assume there was never a

15   protective order in this case, and you produced all of the

16   discovery except for these two email strings.  And then you say

17   you know what, I think, under the Brady obligation, we need to

18   produce these two email strings.

19          Would you have sought a protective order for those two

20   email strings?

21          MR. LUNKENHEIMER:  I don't think so, your Honor.  I

22   would have to check --

23          THE COURT:  So, are they just caught up in this broad

24   protective order?

25          MR. LUNKENHEIMER:  Well, I mean, I guess -- you know, I

1    don't think we would have sought a protective order --

2    potentially, sought a protective order without speaking to

3    maybe the NCB.  We don't have their thought, what Mr. New

4    referred to as people involved in Interpol.

5          I don't know if we would have.  I can't say if -- and

6    Mr. Kramer is not in the same room with me.  I don't know if he

7    has a different opinion.  But, I would not say we would have,

8    to be honest with your Honor.  So --

9          THE COURT:  Mr. Kramer, do you want to add something?

10          MR. KRAMER:  I defer to Mr. Lunkenheimer on this.

11          I think -- you know, I agree with him that these are of

12    a general sensitive nature, and they involve coordination on

13    arrests and law enforcement matters, and that's why we produced

14    these things.

15          You know, recognizing the Court's question of would we

16    have sought a protective order, specifically, for these two

17    emails, I will think -- I think I agree with Mr. Lunkenheimer;

18    however, factually, we did have a protective order, and that is

19    the sense we are going under because these are of a generally

20    sensitive nature.

21          THE COURT:  Okay.  So, what is the specific use that

22    you want to make of these emails if I do exclude them from the

23    protective order, Mr. New?

24          MR. NEW:  Yes, your Honor.  I want to add to that

25    question, your Honor.  And, we have a burden of good cause, but

1    I just want to explain that I need to be careful because one, I

2    don't want to reveal legal strategy or litigation strategy,

3    particularly as Mr. Saab is taking advice from his counsel as

4    to potential recourse in the litigation options.  And, as I

5    said, also, some of them are now public.

6          But, as Mr. Lunkenheimer, you know, mentioned, there

7    are, you know, publicly known -- other jurisdictions that are

8    investigating or looking at Mr. Saab and his family, including

9    the allegedly Italian law enforcement.

10         There was a Cape Verde law enforcement activity here.

11   And, those other jurisdictions, to the extent that they

12   continue to investigate Mr. Saab and/or his family members,

13   will necessarily also have to interact with Interpol.

14         And so, there are a range of potential options here and

15   jurisdictions where these may become particularly important for

16   the defendant in fighting either arrest or detention for other

17   jurisdictions, or, seeking recourse for what he believes to be

18   an unlawful arrest and detention historically.

19         THE COURT:  All right.  So, this is a very unusual

20   case.  And, in many ways, I think the issue of diplomatic

21   immunity, even though I ruled against the defendant, wasn't a

22   completely frivolous claim.  And, I think there are a lot of

23   potential legal matters that may be available to Mr. Saab Moran

24   here or elsewhere.  So, I am going to find that the defense has

25   established a good cause to utilize these or to exclude these

1    two email strings from the protective order.

2         So, I will grant the motion and allow them to use them

3    in any legitimate legal proceedings.

4         MR. LUNKENHEIMER:  And, your Honor, so we can clarify,

5    the defense counsel had sent us the two emails, and I want to

6    -- so, it is on the record, so --

7         THE COURT:  How am I going to identify those?

8         MR. LUNKENHEIMER:  So, they called one "email 1," and

9    the last email on the string --

10        Mr. New, tell me if you disagree with this --

11        -- would be the "email 1" was sent on Friday,

12   June 12th, 2020, at 6:36 P.M., and then what they called "email

13   2," we could call "email 2", being sent Thursday, March 26th,

14   2020, at 9:31 email -- or 9:31 A.M., sorry.

15        Email 1 was one page; email 2 is two pages.

16        And, I think that would suffice, for the record, to

17   identify -- unless Mr. New wants to add any additional

18   descriptive nature of them -- those are the two that I think we

19   are talking about.  I don't know if they were filed with the

20   Court or not.

21        MR. NEW:  I -- that's correct, Mr. Lunkenheimer.  We

22   agree with that characterization of them.

23        I don't believe they have been filed with the Court.  I

24   think we were sensitive to the fact that because we had not

25   used them, you know, in other ways, that we didn't want to

1    then, you know, use them improperly.  So --

2              THE COURT:  All right.  Thank you very much.

3              MR. NEW:  Thank you, your Honor.

4              MR. LUNKENHEIMER:  Thank you, your Honor.

5              THE COURT:  All right.

6              (Proceedings adjourned at 9:16 a.m.)

7

8                          —     —     —

9

10                        C E R T I F I C A T E

11

12

13             I hereby certify that the foregoing is an

       accurate transcription of the proceedings in the

14     above-entitled matter.

15

16

       January 12, 2022        /s/Sharon Velazco
17     DATE                     SHARON VELAZCO, RPR, FPR
                                Official Court Reporter
18                              United States District Court
                                400 North Miami Avenue
19                              8th Floor
                                Miami, Florida 33128
20

21

22

23

24

25

**/**

**/s/Sharon** [1] - 14:16

**1**

**1** [4] - 1:8, 13:8, 13:11, 13:15
**10111** [1] - 2:2
**10:16** [1] - 1:6
**11** [1] - 1:5
**12** [2] - 8:15, 14:16
**12G** [1] - 2:6
**12th** [1] - 13:12
**1400** [1] - 1:17
**15th** [1] - 2:9
**1:19-CR-20450** [1] - 1:3

**2**

**2** [3] - 13:13, 13:15
**2-C** [1] - 2:9
**20005** [1] - 1:18
**2020** [2] - 13:12, 13:14
**2022** [2] - 1:5, 14:16
**26th** [1] - 13:13
**283** [1] - 6:17

**3**

**33128** [2] - 2:17, 14:19
**33132** [2] - 1:22, 2:10
**33140** [2] - 2:6

**4**

**400** [2] - 2:16, 14:18
**45** [1] - 2:2
**46** [1] - 6:18
**4th** [1] - 1:21

**5**

**555** [1] - 2:9
**5750** [1] - 2:5

**6**

**6:36** [1] - 13:12

**8**

**8th** [2] - 1:17, 14:19

**9**

**9** [1] - 3:2

**99** [1] - 1:21
**9:00** [1] - 1:6
**9:16** [1] - 14:6
**9:31** [2] - 13:14
**9:59** [1] - 3:17

**A**

**a.m** [3] - 1:6, 14:6
**A.M** [1] - 13:14
**above-entitled** [1] - 14:14
**accurate** [1] - 14:13
**activity** [1] - 12:10
**actual** [1] - 9:14
**add** [3] - 11:9, 11:24, 13:17
**additional** [2] - 6:1, 13:17
**address** [1] - 4:19
**addressing** [1] - 8:6
**adjourned** [1] - 14:6
**advice** [1] - 12:3
**agents** [1] - 5:1
**ago** [1] - 9:12
**agree** [3] - 11:11, 11:17, 13:22
**agreed** [1] - 9:20
**ahead** [1] - 4:2
**ALEX** [1] - 1:7
**Alex** [2] - 3:8, 4:6
**ALEXANDER** [1] - 1:15
**alexander.kramer@ usdoj.gov** [1] - 1:18
**allegedly** [1] - 12:9
**allow** [2] - 9:13, 13:2
**alone** [1] - 8:14
**altered** [1] - 6:25
**AMERICA** [1] - 1:4
**America** [1] - 4:6
**analyzes** [1] - 6:13
**anticipated** [1] - 5:15
**appealed** [1] - 8:16
**appear** [2] - 3:15, 3:24
**APPEARANCES** [1] - 1:13
**argue** [2] - 7:1, 10:8
**argument** [1] - 8:1
**arguments** [1] - 3:18
**arrest** [6] - 5:7, 5:10, 5:12, 9:7, 12:16, 12:18
**arrests** [1] - 11:13
**aspect** [1] - 8:6
**assist** [1] - 9:14
**assistant** [1] - 3:7
**assume** [1] - 10:14

**attached** [1] - 8:9
**attorney** [2] - 3:7, 3:8
**Attorney's** [1] - 1:21
**AUSA** [1] - 8:3
**available** [1] - 12:23
**Avenue** [4] - 1:17, 2:5, 2:16, 14:18
**aware** [1] - 5:11

**B**

**balances** [1] - 6:13
**based** [3] - 5:23, 6:20, 10:12
**basis** [1] - 5:24
**Beach** [1] - 2:6
**become** [2] - 5:17, 12:15
**BEFORE** [1] - 1:11
**behalf** [1] - 8:1
**believes** [2] - 5:11, 12:17
**blanket** [4] - 6:15, 6:18, 6:22
**Bond** [1] - 1:16
**Brady** [6] - 4:14, 5:21, 6:12, 7:3, 8:19, 10:17
**broad** [1] - 10:23
**Building** [1] - 1:16
**Bulger** [1] - 6:17
**bunch** [1] - 3:3
**burden** [1] - 11:25
**BY** [1] - 2:13

**C**

**cannot** [1] - 6:23
**Cape** [5] - 5:4, 5:7, 5:12, 10:7, 12:10
**capture** [1] - 9:7
**careful** [2] - 5:16, 12:1
**case** [11] - 4:25, 8:14, 8:18, 8:25, 9:12, 10:4, 10:12, 10:15, 12:20
**CASE** [1] - 1:3
**category** [1] - 6:7
**caught** [1] - 10:23
**certain** [1] - 8:25
**certify** [1] - 14:12
**characterization** [1] - 13:22
**check** [2] - 7:12, 10:22
**circumstances** [1] - 5:6
**cited** [1] - 10:13
**claim** [1] - 12:22

**clarify** [1] - 13:4
**codefendant** [1] - 6:2
**Collins** [1] - 2:5
**coming** [1] - 7:23
**completely** [1] - 12:22
**concern** [1] - 5:3
**concerning** [1] - 5:8
**concomitant** [1] - 6:21
**confidential** [1] - 6:9
**connection** [1] - 4:16
**considers** [1] - 5:19
**contain** [1] - 9:1
**continue** [1] - 12:12
**cooperating** [1] - 6:3
**coordination** [2] - 9:7, 11:12
**correct** [1] - 13:21
**counsel** [2] - 12:3, 13:5
**country** [1] - 9:19
**couple** [1] - 3:16
**COURT** [19] - 1:1, 3:2, 3:9, 3:15, 3:22, 4:4, 4:21, 7:6, 7:25, 8:17, 8:24, 10:14, 10:23, 11:9, 11:21, 12:19, 13:7, 14:2, 14:5
**court** [1] - 6:18
**Court** [9] - 2:15, 2:16, 6:13, 6:16, 9:20, 13:20, 13:23, 14:17, 14:18
**Court's** [1] - 11:15
**courts** [2] - 6:16, 7:2
**criminal** [4] - 8:13, 8:18, 9:14, 10:4
**Criminal** [1] - 1:16

**D**

**DATE** [1] - 14:17
**DC** [1] - 1:18
**DEA** [1] - 4:25
**DEFENDANT** [1] - 2:1
**defendant** [3] - 1:8, 12:16, 12:21
**defendant's** [1] - 4:6
**DEFENDANT'S** [1] - 1:10
**defense** [8] - 4:8, 8:19, 8:21, 9:14, 9:19, 10:4, 12:24, 13:5
**defer** [1] - 11:10
**definition** [2] - 9:5, 9:9

**delay** [1] - 4:3
**Department** [1] - 1:15
**descriptive** [1] - 13:18
**detention** [4] - 5:7, 5:12, 12:16, 12:18
**different** [1] - 11:7
**diffusion** [1] - 5:8
**diplomatic** [2] - 8:15, 12:20
**disagree** [1] - 13:10
**disclose** [1] - 10:11
**discovery** [3] - 8:18, 9:14, 10:16
**discussed** [1] - 7:9
**dismiss** [1] - 7:8
**DISTRICT** [3] - 1:1, 1:2, 1:11
**District** [4] - 2:16, 4:25, 6:17, 14:18
**DIVISION** [1] - 1:2
**Division** [1] - 1:16
**docket** [1] - 9:11
**document** [5] - 6:20, 6:21, 7:2, 7:5
**document-by-document** [1] - 6:20
**documents** [4] - 5:25, 6:6, 6:10, 9:17
**DOJ** [2] - 3:7, 5:2
**double** [1] - 7:12
**double-check** [1] - 7:12
**during** [1] - 7:7

**E**

**effectuate** [1] - 5:9
**either** [4] - 4:17, 5:3, 5:14, 12:16
**elsewhere** [1] - 12:24
**Email** [1] - 13:15
**email** [14] - 4:13, 4:16, 4:22, 10:16, 10:18, 10:20, 13:1, 13:8, 13:9, 13:11, 13:12, 13:13, 13:14, 13:15
**emails** [11] - 4:22, 4:23, 5:20, 6:5, 6:7, 7:7, 7:14, 9:3, 11:17, 11:22, 13:5
**enforcement** [4] - 6:2, 11:13, 12:9, 12:10
**entitled** [2] - 4:9, 14:14
**ESQ** [5] - 1:15, 1:20,

2:1, 2:4, 2:8
**Esq** [1] - 2:5
**established** [1] - 12:25
**event** [1] - 7:4
**evidence** [1] - 7:19
**evidentiary** [2] - 7:7, 7:9
**except** [1] - 10:16
**exclude** [2] - 11:22, 12:25
**exhibits** [2] - 7:22
**expectation** [1] - 6:24
**expecting** [1] - 3:5
**explain** [1] - 12:1
**extent** [1] - 12:11
**extradition** [1] - 9:8

## F

**F.R.D** [1] - 6:18
**facilitate** [1] - 5:9
**fact** [2] - 7:1, 13:24
**factually** [1] - 11:18
**fall** [3] - 6:7, 9:4, 9:9
**family** [3] - 9:25, 12:8, 12:12
**far** [1] - 9:15
**federal** [1] - 8:18
**fighting** [1] - 12:16
**filed** [4] - 7:16, 8:7, 13:19, 13:23
**FL** [3] - 1:22, 2:6, 2:10
**Floor** [2] - 1:17, 14:19
**FLORIDA** [1] - 1:2
**Florida** [4] - 1:4, 2:17, 4:25, 14:19
**following** [1] - 3:1
**footnote** [1] - 7:13
**FOR** [2] - 1:15, 2:1
**foregoing** [1] - 14:12
**forget** [1] - 9:18
**former** [1] - 4:24
**forth** [1] - 5:8
**forward** [1] - 3:14
**FPR** [2] - 2:15, 14:17
**Friday** [1] - 13:11
**frivolous** [1] - 12:22
**future** [1] - 4:18

## G

**general** [1] - 11:12
**generally** [1] - 11:19
**government** [8] - 3:4, 5:21, 5:24, 6:11, 6:23, 7:3, 7:18, 8:2

**government's** [1] - 7:6
**grant** [1] - 13:2
**guess** [2] - 9:7, 10:25

## H

**happy** [1] - 3:21
**hard** [1] - 10:8
**hear** [1] - 4:8
**heard** [2] - 3:20, 10:3
**hearing** [5] - 7:7, 7:10, 7:19, 8:7, 8:9
**help** [1] - 9:18
**hereby** [1] - 14:12
**historically** [1] - 12:18
**honest** [1] - 11:8
**Honor** [30] - 3:6, 3:11, 3:12, 3:21, 4:1, 4:10, 4:20, 4:23, 5:11, 5:16, 5:22, 7:1, 7:11, 7:17, 7:18, 7:21, 7:23, 8:4, 8:5, 8:12, 8:23, 9:4, 10:2, 10:21, 11:8, 11:24, 11:25, 13:4, 14:3, 14:4
**HONORABLE** - 1:11

## I

**identified** [1] - 7:15
**identify** [2] - 13:7, 13:17
**identifying** [1] - 9:2
**immunity** [2] - 8:16, 12:21
**important** [1] - 12:15
**improperly** [1] - 14:1
**includes** [1] - 8:19
**including** [1] - 12:8
**indicted** [1] - 6:2
**individuals** [1] - 6:3
**informants** [1] - 6:9
**information** [8] - 6:4, 6:5, 9:2, 9:3, 9:5, 9:10, 10:9
**interact** [1] - 12:13
**interesting** [1] - 3:20
**interests** [1] - 6:14
**Interpol** [6] - 5:2, 5:4, 7:14, 11:4, 12:13
**investigate** [1] - 12:12
**investigating** [1] - 12:8
**investigations** [4] - 5:15, 6:2, 6:10

**involve** [3] - 4:23, 9:6, 11:12
**involved** [2] - 4:14, 11:4
**issuance** [1] - 5:8
**issue** [3] - 8:12, 8:16, 12:20
**issued** [1] - 5:23
**issues** [1] - 7:14
**Italian** [1] - 12:9
**Italy** [1] - 10:7
**items** [1] - 8:25
**itself** [1] - 4:20

## J

**January** [2] - 1:5, 14:16
**jnew@bakerlaw. com** [1] - 2:3
**Joe** [1] - 3:12
**joe@ josephmschuster. com** [1] - 2:7
**join** [1] - 3:14
**JONATHAN** [1] - 2:1
**JOSEPH** [1] - 2:4
**Joseph** [1] - 2:5
**Judge** [2] - 3:20, 4:3
**JUDGE** [1] - 1:11
**June** [1] - 13:12
**jurisdictions** [6] - 4:17, 5:14, 12:7, 12:11, 12:15, 12:17
**Justice** [1] - 1:15

## K

**known** [2] - 5:2, 12:7
**knows** [1] - 8:14
**KRAMER** [2] - 1:15, 11:10
**Kramer** [3] - 3:8, 11:6, 11:9
**KURT** [1] - 1:20
**Kurt** [2] - 3:7, 8:3
**kurt.lunkenheimer @usdoj.gov** [1] - 1:22

## L

**last** [1] - 13:9
**law** [5] - 6:1, 10:12, 11:13, 12:9, 12:10
**lead** [1] - 4:24
**leading** [1] - 7:9
**least** [1] - 10:3
**legal** [6] - 4:17, 5:18, 5:19, 12:2, 12:23, 13:3

**legitimate** [1] - 13:3
**likely** [1] - 6:19
**limited** [2] - 4:12, 6:8
**litigants** [1] - 9:25
**litigation** [5] - 9:22, 9:23, 10:6, 12:2, 12:4
**looking** [1] - 12:8
**Lunkenheimer** [6] - 3:7, 8:3, 11:10, 11:17, 12:6, 13:21
**LUNKENHEIMER** [10] - 1:20, 3:6, 8:3, 8:22, 9:4, 10:21, 10:25, 13:4, 13:8, 14:4

## M

**March** [1] - 13:13
**Massachusetts** [1] - 6:17
**materials** [1] - 8:20
**matter** [3] - 4:5, 9:8, 14:14
**matters** [2] - 11:13, 12:23
**mean** [1] - 10:25
**meet** [1] - 10:11
**members** [2] - 5:1, 9:25, 12:12
**mentioned** [1] - 12:6
**met** [2] - 8:13, 10:5
**MIAMI** [1] - 1:2
**Miami** [8] - 1:4, 1:22, 2:6, 2:10, 2:16, 2:17, 14:18, 14:19
**MICHAEL** [1] - 2:4
**might** [1] - 5:25
**minute** [1] - 3:25
**minutes** [1] - 3:16
**missed** [1] - 3:18
**modification** [2] - 4:12, 6:19
**modified** [2] - 9:13, 9:20
**modify** [2] - 4:7, 10:12
**MODIFY** [1] - 1:10
**months** [1] - 8:15
**MORAN** [1] - 1:7
**Moran** [2] - 4:6, 12:23
**morning** [3] - 3:11, 4:10, 8:5
**MOTION** [1] - 1:10
**motion** [4] - 4:6, 5:23, 7:8, 13:2
**MR** [9] - 3:6, 3:11, 3:19, 4:1, 4:10, 4:23, 7:11, 8:3, 8:22, 9:4,

10:21, 10:25, 11:10, 11:24, 13:4, 13:8, 13:21, 14:3, 14:4

## N

**N.W** [1] - 1:17
**NAIN** [1] - 1:7
**nature** [3] - 11:12, 11:20, 13:18
**NCB** [2] - 5:2, 11:3
**NE** [1] - 1:21, 2:9
**necessarily** [2] - 8:13, 12:13
**need** [2] - 10:17, 12:1
**Neil** [2] - 3:12, 9:16
**NEIL** [1] - 2:8
**neil@ neilmschuster.com** [1] - 2:10
**never** [2] - 6:24, 10:14
**New** [3] - 1:17, 2:2, 3:21
**new** [9] - 3:10, 3:18, 3:23, 8:8, 9:18, 11:3, 11:23, 13:10, 13:17
**NEW** [10] - 2:1, 3:11, 3:19, 4:1, 4:10, 4:23, 7:11, 11:24, 13:21, 14:3
**new's** [1] - 10:10
**nine** [2] - 3:17, 8:14
**NO** [1] - 1:3
**none** [2] - 6:5
**North** [2] - 2:16, 14:18
**noted** [1] - 7:2
**notice** [2] - 5:9
**noting** [1] - 6:14
**number** [1] - 9:12
**NY** [1] - 2:2

## O

**o'clock** [1] - 3:2
**objections** [1] - 5:13
**obligated** [2] - 6:11, 7:3
**obligation** [3] - 5:22, 8:19, 10:17
**obligations** [1] - 7:4
**obviously** [1] - 9:6
**OF** [2] - 1:2, 1:4
**offer** [1] - 7:22
**offered** [1] - 7:19
**Office** [1] - 1:21
**office** [1] - 5:1
**Official** [1] - 14:17

**official** [1] - 2:15
**one** [5] - 7:13, 8:5,
12:1, 13:8, 13:15
**ongoing** [6] - 4:18,
5:14, 6:1, 6:10, 8:14,
8:16
**operate** [1] - 6:22
**operating** [1] - 6:22
**opinion** [1] - 11:7
**options** [3] - 5:19,
12:4, 12:14
**ORDER** [1] - 1:10
**order** [26] - 4:7, 4:20,
5:9, 5:23, 5:24, 6:8,
6:15, 6:23, 6:24, 7:5,
8:11, 8:22, 8:24, 9:10,
9:13, 9:21, 10:12,
10:15, 10:19, 10:24,
11:1, 11:2, 11:16,
11:18, 11:23, 13:1
**orders** [2] - 6:19,
6:20

## P

**P.A** [1] - 2:5
**P.M** [1] - 13:12
**page** [1] - 13:15
**Pages** [1] - 1:8
**pages** [1] - 13:15
**part** [1] - 7:6
**particular** [6] - 4:13,
5:7, 5:20, 6:16, 7:14,
8:25
**particularly** [2] -
12:3, 12:15
**parties** [1] - 6:22
**party** [1] - 10:6
**paused** [1] - 8:14
**people** [4] - 3:3, 3:5,
4:24, 11:4
**perhaps** [1] - 3:13
**permission** [3] -
4:15, 7:17, 7:24
**personal** [1] - 9:2
**personnel** [1] - 5:1
**PII** [1] - 6:3
**Plaintiff** [1] - 1:5
**PLAINTIFF** [1] - 1:15
**play** [1] - 5:13
**Plaza** [1] - 2:2
**pleadings** [3] - 7:9,
7:13, 8:10
**point** [1] - 6:16
**points** [1] - 10:10
**potential** [3] - 12:4,
12:14, 12:23
**potentially** [2] - 4:16,
11:2
**preparation** [2] -

10:3, 10:4
**present** [1] - 8:1
**presented** [1] - 9:16
**primarily** [1] - 4:24
**proceed** [1] - 3:8
**proceedings** [4] -
3:1, 4:17, 13:3, 14:13
**Proceedings** [1] -
14:6
**produce** [4] - 5:22,
6:11, 7:3, 10:18
**produced** [6] - 4:14,
5:21, 8:18, 9:1, 10:15,
11:13
**producing** [2] - 5:25,
7:5
**prosecution** [1] -
4:15
**prosecutor** [1] - 4:24
**protecting** [1] - 6:9
**PROTECTIVE** [1] -
1:10
**protective** [25] - 4:7,
4:20, 5:22, 5:24, 6:8,
6:15, 6:18, 6:19, 6:23,
7:5, 8:11, 8:22, 8:24,
9:10, 9:12, 10:12,
10:15, 10:19, 10:24,
11:1, 11:2, 11:16,
11:18, 11:23, 13:1
**public** [4] - 5:17, 8:6,
12:5
**publicly** [3] - 7:16,
12:0, 12:7
**purpose** [2] - 6:9,
7:20

## Q

**questions** [1] - 5:18
**quite** [1] - 3:2

## R

**range** [1] - 12:14
**reach** [1] - 4:1
**ready** [1] - 3:8
**really** [1] - 10:8
**recognized** [1] - 6:18
**recognizes** [1] - 7:18
**recognizing** [1] -
11:15
**record** [3] - 8:7, 13:6,
13:16
**recourse** [2] - 12:4,
12:17
**red** [1] - 5:9
**reference** [1] - 9:25
**referred** [1] - 11:4
**regard** [2] - 4:19,

5:20
**regular** [1] - 8:17
**relate** [1] - 5:6
**related** [2] - 6:1, 7:13
**reliance** [1] - 7:4
**rely** [1] - 6:23
**REPORTED** [1] -
2:13
**Reporter** [2] - 2:15,
14:17
**reports** [1] - 6:1
**request** [1] - 4:12
**requests** [3] - 4:14,
5:3, 5:4
**response** [2] - 4:14,
7:6
**responses** [1] - 8:19
**restriction** [1] - 8:20
**reveal** [1] - 2:2
**review** [1] - 6:20
**Rivkin** [3] - 3:13,
3:15, 3:23
**ROBERT** [1] - 1:11
**Rockefeller** [1] - 2:2
**room** [1] - 11:6
**RPR** [2] - 2:15, 14:17
**ruled** [1] - 12:21

## S

**SAAB** [1] - 1:7
**Saab** [8] - 4:6, 5:11,
5:19, 8:8, 12:3, 12:8,
12:12, 12:23
**saab's** [1] - 5:7
**Saab's** [1] - 9:23
**safe** [1] - 4:2
**SCHUSTER** [2] - 2:4,
2:8
**Schuster** [4] - 2:5,
3:12, 3:13, 9:16
**SCOLA** [1] - 1:11
**see** [2] - 3:12, 3:24
**seeking** [2] - 7:23,
12:17
**sense** [1] - 11:19
**sensitive** [9] - 6:4,
9:1, 9:3, 9:5, 9:8, 9:9,
9:11, 11:20, 13:24
**sent** [4] - 5:4, 13:5,
13:11, 13:13
**session** [1] - 3:20
**SHARON** [2] - 2:15,
14:17
**show** [1] - 9:18
**showing** [1] - 6:21
**significant** [1] - 9:8
**solely** [1] - 9:24
**someone** [1] - 9:18
**sorry** [1] - 13:14

**sought** [5] - 5:25,
10:19, 11:1, 11:2,
11:16
**SOUTHERN** [1] - 1:2
**Southern** [1] - 4:25
**speaking** [1] - 11:2
**specific** [2] - 6:7,
11:21
**specifically** [2] -
4:21, 11:16
**standard** [3] - 8:13,
10:5, 10:11
**start** [1] - 3:4
**STATES** [3] - 1:1,
1:4, 1:11
**States** [3] - 2:16, 4:5,
14:18
**STENOGRAPHICA**
**LLY** [1] - 2:13
**still** [2] - 8:10, 8:16
**strategy** [3] - 5:18,
12:2
**Street** [2] - 1:21, 2:9
**string** [1] - 13:9
**strings** [7] - 4:13,
4:16, 4:22, 10:16,
10:18, 10:20, 13:1
**subject** [2] - 6:19,
8:10
**suffice** [1] - 13:16
**Suite** [2] - 2:6, 2:9
**support** [1] - 7:8
**surrounding** [1] - 5:6

## T

**targets** [1] - 6:1
**team** [1] - 4:15
**terms** [2] - 5:16, 6:11
**THE** [21] - 1:11, 1:15,
2:1, 3:2, 3:9, 3:15,
3:22, 4:4, 4:21, 7:6,
7:25, 8:17, 8:24, 9:20,
10:14, 10:23, 11:9,
11:21, 12:19, 13:7,
14:2, 14:5
**third** [1] - 10:6
**third-party** [1] - 10:6
**Thursday** [1] - 13:13
**TO** [1] - 1:10
**today** [1] - 3:13
**transcription** [1] -
14:13
**trial** [1] - 3:7
**trying** [1] - 7:21
**two** [14] - 3:25, 4:13,
4:16, 4:22, 5:20, 6:6,
10:16, 10:18, 10:19,
11:16, 13:1, 13:5,
13:15, 13:18

## U

**u.S** [1] - 1:15
**U.S** [3] - 3:7, 6:17,
9:6
**under** [8] - 6:22, 7:3,
8:19, 9:5, 10:17,
11:19, 12:21
**UNITED** [3] - 1:1,
1:4, 1:11
**united** [1] - 2:16
**United** [2] - 4:5,
14:18
**unknown** [1] - 9:22
**unlawful** [2] - 5:12,
12:18
**unless** [1] - 13:17
**unopposed** [1] -
5:23
**unreasonable** [1] -
6:24
**unusual** [1] - 12:19
**up** [2] - 7:9, 10:23
**utilize** [1] - 12:25

## V

**various** [3] - 4:24,
4:25, 5:13
**Velazco** [1] - 14:16
**VELAZCO** [2] - 2:15,
14:17
**Verde** [5] - 5:5, 5:7,
5:12, 10:7, 12:10
**versus** [1] - 4:6
**vs** [1] - 1:6

## W

**wait** [3] - 3:16, 3:17,
3:25
**waiting** [1] - 3:10
**wants** [2] - 3:15,
13:17
**Washington** [2] -
1:18, 5:2
**ways** [2] - 12:20,
13:25
**wife** [1] - 9:24
**wish** [1] - 3:19
**withheld** [1] - 6:8
**witnesses** [2] - 6:3,
6:9
**worth** [1] - 6:14
**written** [1] - 9:23

## Y

**Year** [1] - 3:21
**York** [2] - 1:17, 2:2

## Z

**zoom** [1] - 9:24